Harvey L. Leiderman (SBN 55838)
Email: HLeiderman@reedsmith.com
Tita K. Bell (SBN 206735)
Email: TKBell@reedsmith.com
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111-3922

**Mailing Address:**
P.O. Box 7936
San Francisco, CA 94120-7936

Telephone: 415.543.8700
Facsimile: 415.391.8269

Attorneys for Plaintiff Amisil Holdings Ltd.

ORIGINAL
FILED
AUG 28 2006
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-Filing

MJJ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AMISIL HOLDINGS LTD., a Cyprus Corporation,

Plaintiff,

v.

CLARIUM CAPITAL MANAGEMENT, LLC f/k/a/ THIEL CAPITAL MANAGEMENT, LLC, a Delaware Limited Liability Company, PETER ANDREAS THIEL, a California resident, JASON PORTNOY, a California resident, MARK WOOLWAY, a California resident,

Defendants.

Civil Case No.: C 06 5255

**COMPLAINT FOR:**

**1. VIOLATION OF SECURITIES EXCHANGE ACT OF 1934 SEC. 10(b), 15 U.S.C. § 78j(b), AND RULE 10b-5, 17 C.F.R. § 240.10b-5**
**2. VIOLATION OF INVESTMENT ADVISERS ACT OF 1940, 15 U.S.C. § 80b-1 ET SEQ.**
**3. FRAUD (DECEIT)**
**4. CONVERSION**
**5. BREACH OF FIDUCIARY DUTY**
**6. CONSPIRACY**
**7. BREACH OF CONTRACT**
**8. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**9. UNFAIR BUSINESS PRACTICES, CAL. BUS. & PROF. CODE § 17200 ET SEQ.**
**10. ACCOUNTING AND CONSTRUCTIVE TRUST**
**11. PRELIMINARY AND PERMANENT INJUNCTION**

**AND DEMAND FOR JURY TRIAL**



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Plaintiff Amisil Holdings Ltd. states as follows:

## NATURE OF THE ACTION AND RELIEF SOUGHT

1. Through an elaborate shell game, Defendants Clarium Capital Management, LLC and Peter A. Thiel have confiscated Amisil's investment in Clarium and appropriated Amisil's share of the company's profits for themselves.

2. Amisil Holdings Ltd. ("Amisil") is a long-time investor in Defendant Clarium Capital Management, LLC, f/k/a Thiel Capital Management, LLC ("Clarium"). Clarium, a registered investment adviser, reportedly manages $2 billion in investors' funds. Defendant Peter Thiel ("Thiel") dominates Clarium and its investment portfolio. Thiel and the other individual codefendants, acting individually and on behalf of Clarium, have oppressed and continue to oppress Amisil's rights as holder of a minority membership interest in Clarium. Defendants have also repeatedly breached the company's Subscription Agreement and Operating Agreement to Amisil's continuing damage. Through a pattern and practice of unlawful activity, Defendants have deprived Amisil of the true value of its investment.

3. This is an action for securities fraud in violation of section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder and the Investment Advisers Act of 1940, 15 U.S.C. § 80b-6. This is also an action for common law fraud, conversion, breach of fiduciary duty, conspiracy, breach of contract, breach of implied covenant of good faith and fair dealing, violation of California Business and Professions Code section 17200 set seq., accounting and constructive trust, and preliminary and permanent injunction.

## JURISDICTION

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, for alleged violation of the Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 and for alleged violation of the Investment Advisers Act of 1940. This Court also has jurisdiction in this matter pursuant to 28 U.S.C. § 1332 (a) in that this is a civil action arising between citizens of different states and countries, and the matter in controversy exceeds the

sum of $75,000 exclusive of interest and costs. This Court also has supplemental jurisdiction over the remaining causes of actions alleged herein pursuant to 28 U.S.C. § 1387.

## VENUE

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as Clarium resides and conducts business in this district, the individual Defendants reside in the County of San Francisco, and a substantial part of the events or omissions giving rise to this action arose in the Counties of San Mateo and San Francisco.

## INTRADISTRICT ASSIGNMENT

6. This action must be assigned to the San Francisco or Oakland Divisions of this District pursuant to Civil L.R. 3-2(d) because a substantial part of the events or omissions giving rise to this action arose in the County of San Mateo.

## PARTIES

7. Plaintiff Amisil is a corporation organized and existing under the laws of Cyprus with its principal place of business in Bermuda.

8. Defendant Clarium is a limited liability company organized and existing under the laws of the state of Delaware with its principal place of business in San Francisco, California.

9. Defendant Thiel was at all relevant times the majority member and Managing Member of Clarium and is an individual who resides in the State of California. Amisil is informed and believes and thereon alleges that Thiel resides in San Francisco, California.

10. Defendant Jason Portnoy ("Portnoy") was at all relevant times Chief Financial Officer of Clarium. Amisil is informed and belies and thereon alleges that Portnoy resides in San Francisco, California.

11. Defendant Mark Woolway ("Woolway") was at all relevant times Managing Director of Clarium. Amisil is informed and belies and thereon alleges that Woolway resides in San Francisco, California.



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**SUMMARY OF CLAIM**

12. Defendant Thiel is a Silicon Valley financier and entrepreneur. He is a co-founder and the former Chief Executive Officer of PayPal, the publicly traded on-line payment service acquired by eBay for $1.5 billion in 2002. The sale made Thiel an instant multimillionaire.

13. Defendant Clarium is a global macro hedge fund manager reportedly managing over $2 billion in investor capital. Since October 2002, new investors in Clarium reportedly have more than tripled their investment. In 2003, and again in 2005, Clarium reportedly had net returns of over 50%. At all times relevant to this Complaint, Clarium has received a management fee and/or a substantial portion of the annual profits earned for its investor clients.

14. Amisil has been a minority member of Clarium since 1998. Pursuant to Clarium's Operating Agreement and applicable law, Amisil is entitled to certain benefits for its ownership interest. In the early years, Thiel expressly led Amisil to believe that its minority interest was nearly worthless. Indeed, shortly after PayPal's initial public offering in 2002, Thiel proposed to buy Amisil out of Clarium for $372, which Thiel deceitfully represented was the fair market value for Amisil's interest at that time. In reality, however, and unbeknownst to Amisil, the fair market value of Amisil's interest was many multiples of the amount being offered. Moreover, in light of events that occurred just two months after Thiel's $372 offer, the true value of Amisil's interest in Clarium escalated to more than a thousand times that amount, again unbeknownst to Amisil. Amisil rejected the buy-out offer in 2002 and instead remained a minority member of Clarium, waiting for its investment to continue to mature.

15. For the next three years, Clarium and Thiel gave Amisil no information about its investment in Clarium. It was not until early this year that Amisil learned for the first time that Clarium had begun managing hedge funds with assets in excess of $1.5 billion. Shortly thereafter, Amisil also learned that Clarium, at the direction of Thiel, had quietly bought out all the other investors in Clarium so that Thiel and Amisil were the only remaining members. Further, Amisil learned for the first time that Clarium had made a $31 million (or more) distribution to Thiel personally out of its calendar year 2005 profits. No distribution was made to Amisil for that year -- or for any other period. Upon learning of Thiel's sizeable distribution, Amisil sought to exercise

its contractual rights as a member of Clarium, requesting past due financial statements and other related documents from Clarium in an effort to ascertain the extent and value of its interest in the company. In response, Clarium, at the direction of Thiel, unilaterally and unlawfully issued a notice claiming to expel Amisil as a member of Clarium and confiscating Amisil's share of the company, at a fraction of its value.

16. In short, Defendants have fraudulently seized control over Amisil's property, deprived Amisil of its rightful distributions and oppressed Amisil as a minority member of Clarium. These are the facts that warrant the filing of this lawsuit.

## BACKGROUND AND GENERAL ALLEGATIONS

### Chronology of Events

17. On or about September 5, 1996, Clarium became a registered investment advisor with the federal Securities Exchange Commission.

18. On December 19, 1997, Thiel solicited Amisil to invest in Thiel Capital International, LLC (the "Fund") and Clarium. Both entities had principal offices located in Menlo Park, California. Clarium was the investment adviser to the Fund. As part of Thiel's inducement of Amisil to enter into the transaction, Thiel provided Amisil with operating agreements for the Fund and Clarium. Attached hereto as Exhibits A and B are true and correct copies of the Operating Agreement of Thiel Capital International, LLC (the "Fund's Operating Agreement"), and the Operating Agreement of Thiel Capital Management, LLC ("Clarium's Operating Agreement"), both of which are dated September 9, 1996.

19. On February 27, 1998, based upon the materials presented and Thiel's representations, Amisil entered into a subscription agreement with the Fund and Clarium. Attached hereto as Exhibit C is a true and correct copy of the Subscription and Investment Representation Agreement entered into between Amisil, Thiel Capital International, LLC, and Thiel Capital Management, LLC (n/k/a Clarium Capital Management, LLC), dated February 27, 1998 ("Subscription Agreement"). According to the Subscription Agreement, upon Amisil's investment

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

of $300,000, Amisil would receive a 1% membership interest in Clarium. On February, 1998, Amisil paid $300,000 to the Fund and Clarium.

20. According to the Fund's Operating Agreement, Clarium, as the Manager of the Fund, earned a 20% performance bonus annually for its services to the Fund, which is referred to in the operating agreement for the Fund as an "incentive allocation." See Exhibit A, the Fund's Operating Agreement, section 4.1.

21. Additionally, Clarium, as the Manager of the Fund, earned a management fee equal to 1% per annum of each Capital Contribution made by a Member through the end of the Fiscal Quarter in which such Capital Contribution is made. On the first day of each Fiscal Quarter thereafter, Clarium earned a fee in an amount equal to 0.25% of the value of such Member's Opening Capital Account balance as defined in the Fund's Operating Agreement. See Exhibit A, section 6.6 (c).

22. On or about March 31, 1999, after a year of poor performance by the Fund, Amisil withdrew the remaining balance of its investment in the Fund, which was less than its initial capital contribution. However, Amisil retained its full membership interest in Clarium.

23. In December 1998, the Fund made a private equity investment and was the sole seed investor into a new company called Field Link, which was renamed Confinity shortly thereafter, then ultimately renamed PayPal, Inc. ("PayPal"). The Fund obtained a substantial ownership interest in PayPal in return for its investment therein. Thiel also obtained a substantial interest in PayPal, personally. PayPal was in the business of providing payment services for on-line business transactions.

24. By January 1999, as a part of and/or in addition to this seed investment, Thiel became CEO of FieldLink, later PayPal.

25. During the relevant time period, Portnoy served as Vice President of Financial Planning and Analysis at PayPal. As a senior member of PayPal's financial team, Portnoy was responsible for the corporate financial model, M&A due diligence, and communications with the investment community.

26. During the relevant time period, Woolway served as Vice President of Corporate Development at PayPal. Woolway was responsible for PayPal's private financing and oversaw its buy-side M&A activity. Woolway led the execution of PayPal's $80 million initial public offering.

27. According to year-end financial statements for 1998 and 1999 provided by the Fund and Clarium's accountants, Ernst & Young, LLP, Clarium reinvested its annual management earnings (including that portion distributable to Amisil's interest) back into the Fund. At the end of fiscal year 1999, Clarium owned at least 15% of the Fund.

28. On February 14, 2002, PayPal conducted an initial public offering ("IPO") of its shares in the public markets. By its second day of trading, Thiel's personal stake in PayPal was in excess of $100 million while the Fund's estimated stake was, at a minimum, of $24 million. As manager of the Fund and an investor in the Fund, Clarium's stake in PayPal was worth approximately $4.9 million.

29. On or about May 2, 2002, at the behest of Thiel, Clarium attempted to buy out Amisil's membership interest in Clarium for $372. Attached hereto as Exhibit D is a true and correct copy of correspondence, dated May 2, 2002, sent by Peter Thiel of Thiel Capital Management, LLC (n/k/a Clarium Capital Management, LLC), to Amisil.

30. Shortly thereafter, in June and July 2002, PayPal, via the efforts of Thiel, Portnoy and Woolway, completed a $131.1 million secondary public offering of 6.9 million shares.

31. On July 8, 2002, PayPal announced that it would be sold to eBay, Inc. ("eBay") for approximately $1.54 billion.

32. On October 3, 2002, eBay completed the purchase of PayPal for $1.5 billion in stock. On the same date, Thiel announced his resignation from PayPal effective immediately.

33. On January 23, 2003, according to the state of California Department of Corporations, Clarium changed its name to Clarium Capital Management, LLC.

34. On February 19, 2003, Thiel, on behalf of Clarium, wrote to Amisil regarding certain proposed changes to Clarium's Operating Agreement. Among the changes would be a new provision purporting to authorize the Managing Member of Clarium to remove a member without the member's consent. Shortly thereafter, pursuant to section 10.4 of Clarium's Operating

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Agreement, Amisil objected in writing to some of the proposed changes to Clarium's Operating Agreement, including specifically the provision concerning removal of a member without consent.

35. During 2002, 2003, 2004 and 2005, Clarium failed to make any distributions to Amisil, issue any tax returns or disclose any of its operations to Amisil.

36. On February 9, 2006, Portnoy and Woolway, officers of Clarium, left a voicemail message for Amisil about "clearing up some old records" that were discovered as part of their work effort for their registration with the Securities Exchange Commission.

37. On March 1, 2006, Amisil learned that Clarium was managing a hedge fund with more than $1.5 billion in assets.

38. On March 14, 2006, Portnoy and Woolway met with Amisil in San Francisco to discuss Amisil's interests in Clarium. At that meeting, Portnoy and Woolway informed Amisil that Clarium now had only two members: Thiel and Amisil, with Thiel holding 98.66%. Reportedly all other members in Clarium had been bought out in 2002. At the meeting, Portnoy also stated that for calendar year 2005, (1) Clarium's revenues were $72 million; (2) its operating costs were $11 million; (3) it paid $30 million in bonuses to employees; and (4) it distributed $31 million to Peter Thiel.

39. Since the inception of its membership interest in Clarium, Amisil has received no annual or quarterly financial documents relating to Clarium and/or its interests. Consequently, in light of the information that Clarium actually had revenue in 2005 and that multi-million dollar distributions were made to the other member (Thiel), on March 20, 2006, Amisil made a written request to inspect certain books and records of Clarium (the "requested documents") as provided by the Operating Agreement.

40. On March 21, 2006, Portnoy informed Amisil that the requested documents would be forthcoming. It later became apparent that this was merely a delay tactic and Defendants had no intention of producing the requested documents to Amisil.

41. On May 2, 2006, Thiel proposed to buy out Amisil's membership interest.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

42. On June 14, 2006, Thiel made a verbal offer of $300,000 for Amisil's interest in Clarium, which Thiel claimed had been reduced to a fraction of Amisil's vested interest. Amisil informed him that any offer would be difficult to assess without first reviewing Clarium's books.

43. On June 22, 2006, Clarium proposed that a third-party appraiser value Amisil's purportedly reduced membership interest, but again refused to allow Amisil access to Clarium's books and records.

44. On July 17, 2006, Amisil made another request to inspect Clarium's books and records, this time by means of a formal written notice to Clarium to inspect its books and records pursuant to Amisil's rights as a member of Clarium.

45. In response to Amisil's exercise of its right to inspect Clarium's books and records, on July 20, 2006, Thiel, in his capacity as Managing Member of Clarium, purported to expel Amisil as a member of Clarium and acquire its interest, effective July 26, 2006. Attached hereto as Exhibit E is a true and correct copy of correspondence, dated July 20, 2006, sent by Clarium's General Counsel to Amisil's counsel. In connection with this forced sale, not only did Clarium wrongfully assert that it had the unilateral authority to make such a forced sale, but, in its previous correspondence regarding a buy-out, Clarium wrongfully asserted that Amisil had only a 0.3% interest in Clarium. Thus, by virtue of Clarium's July 20, 2006 to Amisil, it was apparent that that the purported purchase by Clarium of Amisil's membership interest would be far less than its actual value.

46. Clarium's Operating Agreement, section 4.1, provides in relevant part:

**Allocations of Clarium Profits and Losses.**

(a) General. Except as otherwise provided in this Section 4.1, the items of Profit and Loss of Clarium for each fiscal quarter (or shorter period selected by the Managing Member) shall be allocated as follows:

(i) Items of Profit and Loss attributable to Incentive Fees and to Management Fees shall be allocated among the Members in proportion to their respective Membership Interests.

(ii) All other items of Profit and Loss shall be allocated among the Members in proportion to their respective Capital Contributions.

(iii) Items of loss, expense or deduction attributable to Clarium's indemnification obligation under Section 9.2 shall be allocated among the Members in proportion to their respective Membership Interests.



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

47. Section 5.1 of Clarium's Operating Agreement provides in relevant part:

**Discretionary Distributions.**

The Managing Member in his sole discretion shall determine the amount and timing of all distributions by Clarium and whether such distributions will be in cash or in kind or partly in cash and partly in kind. Except as otherwise provided herein, all distributions shall be made in proportion to the Members' closing Capital Account balances determined as of the close of the allocation period for which such distribution occurs. Distributions in kind shall be made at valuations determined as provided in Section 6.10.

48. For fiscal year 2005, Thiel, the Managing Member of Clarium, received a $31 million distribution. For that same fiscal year, and since becoming a member of Clarium in 1998, Amisil has received no distributions whatsoever.

49. Section 6.9 of Clarium's operating agreement provides in relevant part:

**Records and Financial Statements.**

(a) Clarium shall maintain true and proper books, records, reports, and accounts in which shall be entered all transactions of Clarium. Such books, records, reports and accounts shall be located at the Principal Office and shall be available to any Member for inspection and copying during reasonable business hours.

(b) Clarium shall maintain all Schedules to this Agreement and shall update such Schedules promptly upon receipt of new information relating thereto. Schedules to this Agreement shall be treated as records of Clarium for purposes of Section 6.9(a).

(c) Within 90 days after the end of each Fiscal Year, Clarium shall furnish to each Member a statement of (i) the assets and liabilities of Clarium, (ii) the net Profit or Loss of Clarium, and (iii) the Capital Account balance of such Member. In addition, within 90 days after the end of each Fiscal Year, Clarium shall supply all information reasonably necessary to enable the Members to prepare their Federal income tax returns and (upon request therefor) to comply with other reporting requirements imposed by law.

(d) Within 30 days after the value of any asset is determined pursuant to Section 6.10, Clarium shall furnish to each Member a statement identifying the asset valued and the value determined therefor.

(e) Clarium shall promptly deliver to the Members copies of all financial reports delivered by the Fund to its constituent members.

50. Despite multiple requests for such information, Amisil has received no yearly and/or quarterly statements for Clarium or the Fund since becoming a member of Clarium.

## FIRST CLAIM FOR RELIEF

**Violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5 Against All Defendants**

51. Plaintiff re-alleges paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52. Amisil's minority interest in Clarium was acquired pursuant to an investment contract, and is therefore a "security" as defined in the Securities Act of 1933, 15 U.S.C. § 77b(a)(1), and the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(1). Amisil invested its money in a common enterprise and was led to expect profits solely from the efforts of Clarium. As an investor, Amisil had no meaningful control over its investment. Amisil was a passive investor relying on the efforts of Clarium and its Managing Member, Thiel.

53. Defendants' attempt to expel Amisil as a member of Clarium was null and void because Clarium's Operating Agreement specifically prohibits the removal of a member without its consent (see Exhibit B, section 7.3). Further, the attempted purchase and sale of Amisil's interest was aborted due to Defendants' fraud. Alternatively, if such expulsion is deemed to be effective, the forced confiscation of Amisil's minority interest in Clarium without a proper accounting and far less than its value amounted to a purchase and sale of that security.

54. In connection with the purchase and sale of Amisil's security, Defendants disseminated false statements and/or concealments described above, which they knew or recklessly disregarded were materially false and misleading, in that they contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made not misleading. Defendants engaged in a scheme to defraud Amisil and/or acts and practices that operated a fraud on Amisil by forcing the sale of Amisil's membership interest in Clarium at a fraction of its value, while failing to furnish any information that would have allowed Amisil to determine the value of its membership interest and refusing to allow Amisil access to Clarium's books and records to which it is legally and contractually entitled.

55. Defendants, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

misrepresent and conceal material information about Clarium from Amisil, employ a scheme to defraud Amisil and operate a fraud on Amisil in the following manner, among others:

(a) Defendants have maintained in connection with the aborted July 26, 2006 sale of Amisil's interest that Amisil had a 0.3% membership interest (rather than at least a 1% interest), yet Defendants have not disclosed the basis on which that reduced membership interest was calculated, or the basis on which the value of such an interest would be calculated; and

(b) Defendants have also failed to furnish any financial information to Amisil or provide Amisil access to Clarium's books and records so that Amisil could independently ascertain the fair market value of its interest in Clarium's securities.

56. Culminating with the purported confiscation of its membership interest in Clarium, Amisil relied on Defendants' manipulative and deceptive conduct, to its detriment. During the course of the said misrepresentations and concealments, Amisil was ignorant of their falsity or concealment and believed the false statements to be true. Had Amisil known of the truth, which was never disclosed to it by Defendants, Amisil would have demanded an immediate accounting and, absent voluntary acquiescence by Clarium, would have immediately filed legal action to block further wrongful acts and to secure damages.

57. As a result of Defendants' manipulative and deceptive conduct, Amisil has been deprived of a proper accounting, of any unpaid distributions due in connection with its eight-year membership interest in Clarium, and the current fair market value of its interest in Clarium.

58. Defendants' manipulative and deceptive conduct was the proximate cause of Amisil's loss. This loss was clearly foreseeable to Defendants when they engaged in the fraudulent conduct described herein.

59. As a result of the acts and omissions alleged herein, Amisil has been damaged in an amount subject to proof at the time of trial, which amount exceeds $75,000.00, excluding attorneys' fees and costs of suit.

**SECOND CLAIM FOR RELIEF**

**Violation of the Investment Advisers Act of 1940 15 U.S.C. § 80b-1 et seq. Against All Defendants**

60. Plaintiff re-alleges paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61. The acts and omissions of Defendant Clarium, aided and abetted by Defendants Thiel, Portnoy and Woolway, set forth above and incorporated herein, have resulted in Clarium's acquisition of control over securities owned by Amisil. As such, Clarium, a registered Investment Adviser, has assumed a fiduciary relationship with Amisil as its client.

62. Defendant Clarium, aided and abetted by its principals Defendants Thiel, Portnoy and Woolway, has, by use of the mails or other means or instrumentality of interstate commerce, engaged in acts and practices that were fraudulent, deceptive, and manipulative. Among other things, Defendants knowingly made misrepresentations to Amisil as to the value of Amisil's membership interest while attempting on several occasions to involuntarily acquire Amisil's stake in Clarium for less than the amount to which Amisil is entitled. Defendants knowingly concealed material information from Amisil in many ways, including but not limited to failing to provide information about Clarium's business plans, failing to provide any meaningful financial information regarding Clarium in the course of Amisil's eight-year investment and re-investing Amisil's interest in distributions back into the Fund and elsewhere without Amisil's knowledge or consent. Defendants knowingly made the following material misrepresentations and omissions, among others, to Amisil:

(a) From 2000 to the present, Defendants have failed to furnish the required yearly financial statements to Amisil such that Amisil was deprived of information which would have allowed it to determine the value of any profits made by Clarium or evaluate its entitlement to any distributions owed by Clarium, and determine whether to continue to invest in Clarium;

(b) On May 2, 2002, in an unsolicited offer to purchase Amisil's stake in Clarium, Defendants represented that the fair market value of Amisil's membership



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

interest in Clarium was only $372 when in fact it was worth substantially more than that;

(c) Defendants failed to divulge information to Amisil that would have allowed Amisil to obtain an accurate understanding of the proposed merger of PayPal and eBay in October 2002 and accurately determine what the return on its investment should be in connection with that transaction;

(d) In 2005 and thereafter, Defendants concealed the fact that Clarium made a distribution to Thiel in the amount of at least $31 million and failed to furnish any explanation or accounting for such distribution;

(e) In 2006, when Amisil learned of the 2005 distribution to Thiel and requested access to Clarium's books and records, Defendants refused to comply despite Amisil's clear entitlement to inspect and copy those records under Clarium's Operating Agreement; and

(f) In July 2006, upon declaring that Amisil had been expelled from membership in Clarium and stating that it would be paid a sum of money for a fraction of its true membership interest, Defendants failed to disclose the basis on which that membership interest was calculated, the fair value of Amisil's interests, or the basis on which the sum of money to be paid to Amisil would be calculated; furthermore, Defendants have not provided Amisil access to Clarium's books and records upon which the value of Amisil's interests could be ascertained.

63. Defendants' misrepresentations and concealments, as alleged above, were material in that they related to the value of Clarium and Amisil's interests in the securities of Clarium, and the value of any profits made in connection with the PayPal IPO, the sale of PayPal to eBay, and subsequent investments.

64. As set forth above, Defendants willfully intended to deceive Amisil in order to prevent Amisil from receiving any income distributions and, ultimately, to force a sale of Amisil's interest in Clarium's securities for a mere fraction of its true value.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

65. Amisil relied on Defendants' misrepresentations and concealments to its detriment. Had Amisil been aware of the false statements and concealed information, it would have immediately demanded an accounting and payment of any unpaid distributions. Instead, Amisil has been deprived of the use and control of the unpaid distributions, whether they were in cash or in kind.

66. Amisil's reliance on the false and misleading statements made by Defendants was reasonable and justifiable in that Defendants possessed information that was not available to Amisil. For one, Defendants had a duty to divulge truthful information to Amisil so that it could obtain an accurate picture of the proposed merger of PayPal and eBay and accurately determine what the return on its investment should be in connection with that transaction.

67. For the foregoing reasons, Defendants have violated the Investment Advisers Act of 1940, for which violation Amisil is entitled to damages and equitable relief according to proof at trial.

**THIRD CLAIM FOR RELIEF**

**Fraud (Deceit)**
**Against All Defendants**

68. Plaintiff re-alleges paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69. Defendants knowingly made the following material misrepresentations and omissions, among others, to Amisil:

(a) From 2000 to the present, Defendants have failed to furnish the required yearly financial statements to Amisil such that Amisil was deprived of information which would have allowed it to determine the value of any profits made by Clarium or evaluate its entitlement to any distributions owed by Clarium, to determine whether to continue to invest in Clarium; and to determine whether to exercise any of its rights as a member of Clarium;

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(b) On May 2, 2002, in an unsolicited offer to purchase Amisil's stake in the Clarium, Defendants represented that the fair market value of Amisil's membership interest in Clarium was only $372 when in fact it was worth substantially more than that;

(c) Defendants failed to divulge information to Amisil that would have allowed Amisil to obtain an accurate understanding of the eBay acquisition of PayPal in October 2002 and accurately determine what the return on its investment should be in connection with that transaction;

(d) In 2005 and thereafter, Defendants concealed the fact that Clarium made a distribution to Thiel in the amount of at least $31 million and failed to furnish any explanation or accounting for such distribution; and

(e) In July 2006, upon declaring that Amisil had been expelled from membership in Clarium and stating that it would be paid a sum of money for only a fraction of its true membership interest, Defendants did not disclose the basis on which that membership interest was calculated, the fair value of Amisil's interests, or the basis on which the sum of money to be paid to Amisil would be calculated; furthermore, Defendants have not provided Amisil access to Clarium's books and records upon which the value of Amisil's interests could be ascertained.

70. Defendants also knew, or were reckless in failing to know at the time of these material omissions and misrepresentations, that they caused a false and misleading picture of the Clarium's operations and profitability to Amisil. Because of their executive and managerial positions with Clarium, Defendants Thiel, Portnoy and Woolway (a) knew or had access to the material, non-public information about Clarium's operations and planned business strategy; and (b) drafted, reviewed, ratified, published, and/or approved the false or misleading statements about Clarium with the knowledge and expectation that they would be given to Amisil.

71. Defendants Thiel, Portnoy and Woolway, as officers of Clarium, owed a duty to provide its minority member a full and fair disclosure of all facts affecting Amisil's rights and

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

interests. Defendants had a duty to divulge truthful information to Amisil so that it could obtain an accurate picture of the proposed PayPal IPO, the PayPal and eBay transaction and subsequent transactions, and accurately determine what the return on its investment should be in connection with those transactions. Thiel, Portnoy and Woolway had exclusive knowledge of the material facts described above, none of which were known to Amisil, and actively concealed the material facts.

72. Defendants' misrepresentations and concealments, as alleged above, were material in that they related to the value of Clarium and Amisil's rights as a member of Clarium, particularly the value of any profits made in connection with the PayPal IPO, the sale of PayPal to eBay, and subsequent investments.

73. As set forth above, Defendants willfully intended to deceive Amisil, and/or had no reasonable basis for believing that the representations set forth above, among others, were true. The misrepresentations and concealments were designed to prevent Amisil from understanding the conduct of Clarium's business or otherwise exercise its rights under the Clarium Operating Agreement or receiving any income distributions, and ultimately to force a sale of Amisil's interest in Clarium for a mere fraction of its true value, which would result in significant pecuniary benefits for Thiel, Portnoy and Woolway.

74. Amisil was unaware of the concealments or the falsity of the misrepresentations set forth above, among others, and relied on them, to its detriment. Had Amisil been aware of the false statements and concealed information, it would have immediately demanded an accounting and payment of any unpaid distributions. Instead, Amisil has been deprived of the use and control of the unpaid distributions, whether they were in cash or in kind.

75. Amisil's reliance on Defendants' misrepresentations and concealments was reasonable and justifiable in that Defendants were in a position of knowledge and authority and possessed information that was not available to Amisil.

76. As a result of the acts and omissions alleged herein, Amisil has been damaged in an amount subject to proof at the time of trial, which amount exceeds $75,000.00, excluding attorneys' fees and costs of suit.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

77. In doing the acts alleged herein, Defendants acted in conscious and intentional disregard for Amisil's rights and acted with oppression, fraud, and/or malice so as to entitle Amisil to recover punitive and exemplary damages against Defendants in an amount deemed by the trier of fact to be sufficient to punish, deter, and make an example of Defendants.

**FOURTH CLAIM FOR RELIEF**

**Conversion**
**Against All Defendants**

78. Plaintiff re-alleges paragraphs 1 through 77 of this Complaint as if fully set forth herein.

79. Amisil owned the money and/or shares of stock that should have been distributed to it as income pursuant to its membership interest in Clarium for the past eight years. Instead, such money and/or shares of stock have been wrongfully retained or otherwise appropriated by the Defendants.

80. Defendants intentionally interfered with Amisil's ownership of the money and/or shares of stock. Amisil has demanded an inspection of certain books and records of Clarium in order to determine the value of such money and/or shares of stock that have been wrongfully retained by Defendants so that Amisil can make an appropriate demand. However, Defendants have refused to comply fully with Amisil's request and have paid no money and given no shares of stock to Amisil to date.

81. As a result of the acts and omissions alleged herein, Amisil has been damaged in an amount subject to proof at the time of trial, which amount exceeds $75,000.00, exclusive of interest, attorneys' fees and costs of suit.

82. In doing the acts alleged herein, Defendants acted in conscious and intentional disregard for Amisil's rights and acted with oppression, fraud, and/or malice so as to entitle Amisil to recover punitive and exemplary damages against Defendants in an amount deemed by the trier of fact to be sufficient to punish, deter, and make an example of Defendants.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## FIFTH CLAIM FOR RELIEF

**Breach of Fiduciary Duty**
**Against Thiel, Portnoy and Woolway**

83. Plaintiff re-alleges paragraphs 1 through 82 of this Complaint as if fully set forth herein.

84. Defendants Thiel, Portnoy and Woolway, in their capacity as officers and directors of and/or majority members in Clarium, were and are fiduciaries to all members in Clarium. As fiduciaries, they owe Amisil a duty of loyalty, honesty and candor regarding the conduct of the affairs of Clarium and their handling of Amisil's interest in Clarium's securities. These Defendants have a duty to exercise reasonable care with respect to their conduct as fiduciaries to Amisil and not to mislead or deceive Amisil. They are required to use their ability to control the company in a fair, just, and equitable manner and to ensure that any use to which they put Clarium or their power to control Clarium must benefit all members of Clarium proportionately and must not conflict with the proper conduct of Clarium's business.

85. Defendants Thiel, Portnoy and Woolway breached their fiduciary duties by intentionally and/or recklessly misstating to Amisil, as alleged above, facts that were material in that they related to Clarium's business plan and operations and the value of Amisil's interest in Clarium from time to time. Defendants used their power to control company activities to benefit themselves alone or in a manner detrimental to Amisil, the minority member. Accordingly, these are facts that were important to Amisil in evaluating and deciding to retain or dispose of its interest in Clarium, and the true facts, if known, would have altered the basis on which Amisil would have made its decisions.

86. As a result of the acts and omissions alleged herein, Amisil has been damaged in an amount subject to proof at the time of trial, which amount exceeds $75,000.00, exclusive of interest, attorneys' fees and costs of suit.



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**SIXTH CLAIM FOR RELIEF**

**Conspiracy to Defraud and to Breach Fiduciary Duties Against Thiel, Portnoy and Woolway**

87. Plaintiff re-alleges paragraphs 1 through 86 of this Complaint as if fully set forth herein.

88. Defendants Thiel, Portnoy and Woolway had knowledge of and agreed to the objective and course of action to injure Amisil. Defendants took steps in furtherance of the conspiracy by not allowing Amisil to be informed about the conduct of Clarium's business, failing to make any income distributions to Amisil despite its eight-year investment in Clarium, and ultimately attempting to expel Amisil from Clarium and force a sale of Amisil's interest in Clarium for a fraction of its true value.

89. Defendants Thiel, Portnoy and Woolway made numerous misrepresentations to and concealments from Amisil and breached their fiduciary duties to Amisil, as alleged above.

90. As a proximate result of the acts and omissions alleged herein, Amisil has been damaged in an amount subject to proof at the time of trial, which amount exceeds $75,000.00, exclusive of interest, attorneys' fees and costs of suit.

91. In doing the acts alleged herein, Defendants acted in conscious and intentional disregard for Amisil's rights and acted with oppression, fraud, and/or malice so as to entitle Amisil to recover punitive and exemplary damages against Defendants in an amount deemed by the trier of fact to be sufficient to punish, deter, and make an example of Defendants.

**SEVENTH CLAIM FOR RELIEF**

**Breach of Contract Against Clarium**

92. Plaintiff re-alleges paragraphs 1 through 91 of this Complaint as if fully set forth herein.

93. Amisil and Clarium are parties to the Subscription Agreement and Clarium's Operating Agreement.

94. Amisil has complied with all covenants and conditions imposed by the Subscription Agreement and Clarium's Operating Agreement, except those that have been excused or waived by Clarium.

95. In breach of the Subscription Agreement and Clarium's Operating Agreement, Clarium has, among other things, failed to make Clarium's books, reports and accounts available for inspection and copying by Amisil despite repeated requests (Clarium's Operating Agreement, section 6.9); failed to furnish "a statement of (i) the assets and liabilities of Clarium, (ii) the net Profit or Loss of Clarium, and (iii) the Capital Account balance of such Member" within 90 days after each fiscal year (Clarium's Operating Agreement, section 6.9); failed to make any distributions to Amisil to date (Clarium's Operating Agreement, sections 4.1 and 5.1); seized control over Amisil's membership interest by wrongfully allocating or utilizing the funds and/or shares of stock that should properly have been distributed to Amisil; and oppressed Amisil's exercise of its rights under the Subscription Agreement and Clarium's Operating Agreement.

96. As a result of Clarium's breach, Amisil has been damaged in an amount subject to proof at the time of trial, which amount exceeds $75,000.00, exclusive of interest, attorneys' fees and costs of suit.

**EIGHTH CLAIM FOR RELIEF**

**Breach of Implied Covenant of Good Faith and Fair Dealing Against Clarium**

97. Amisil re-alleges paragraphs 1 through 96 of this Complaint as if fully set forth herein.

98. The Subscription Agreement and Clarium's Operating Agreement each contain an implied covenant of good faith and fair dealing requiring that neither party do anything to deprive the other of the benefits of the contract. This covenant imposes on each party the duty to do everything the contract presupposes that party will do to accomplish the purpose of the contract.



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

99. Clarium has breached the implied covenant of good faith and fair dealing by interfering with or failing to cooperate with the Amisil in the performance of both agreements as set forth above and incorporated herein.

100. As a result of Clarium's breach, Amisil has been damaged in an amount subject to proof at the time of trial, which amount exceeds $75,000.00, exclusive of interest, attorneys' fees and costs of suit.

101. In doing the acts alleged herein, Defendants acted in conscious and intentional disregard for Amisil's rights and acted with oppression, fraud, and/or malice so as to entitle Amisil to recover punitive and exemplary damages against Defendants in an amount deemed by the trier of fact to be sufficient to punish, deter, and make an example of Defendants.

## NINTH CLAIM FOR RELIEF

**Unfair Business Practices**
**Violation of Cal. Bus. & Prof. Code § 17200, et seq.**
**Against All Defendants**

102. Plaintiff re-alleges paragraphs 1 through 101 of this Complaint as if fully set forth herein.

103. California Business and Professions Code section 17200, et seq., prohibits "any unlawful, unfair or fraudulent business act or practice."

104. The acts and practices described above and incorporated herein were unlawful, unfair and fraudulent. Defendants have oppressed and continue to oppress Amisil's rights as owner of a minority interest in Clarium. Pursuant to Clarium's operating agreement and applicable law, Amisil is entitled to certain benefits for its ownership status. However, Defendants, in breach of their respective duties to Amisil, have engaged in a pattern and practice of disguising the true value of Amisil's membership interest while purporting to offer Amisil the real value of its interest. In addition, Defendants have refused to allow Amisil access to financial statements and other related documentation from Clarium except on limited terms contrary to the applicable agreements between the parties. Finally, Defendants unilaterally and unlawfully issued a notice purporting to expel Amisil as a member of Clarium and pay it a mere fraction of the value of its interest.



REED SMITH LLP
A limited liability partnership formed in the State of Delaware

105. As a result of the unlawful, unfair and fraudulent acts and practices described above, Defendants have been and continue to be unjustly enriched by way of income distributions that were never made to Amisil over the course of the past eight years but instead have been confiscated or otherwise appropriated by Defendants.

106. Amisil brings this action pursuant to Cal. Bus. & Prof. Code § 17203 for restitution and injunctive relief to stop such continued unfair, unlawful and fraudulent business practices of Defendants.

## TENTH CLAIM FOR RELIEF

### Accounting and Constructive Trust Against All Defendants

107. Plaintiff re-alleges paragraphs 1 through 106 of this Complaint as if fully set forth herein.

108. The amount of money and/or stock misappropriated and due from Defendants is presently unknown to Amisil and cannot be ascertained without a complete forensic accounting of the books and records of Clarium and from each of the Defendants.

109. Amisil is informed and believes and thereon alleges that the requested accounting will reveal the assets improperly misappropriated by Defendants.

110. As a result of the acts and omissions set forth herein, as will be revealed in the requested accounting, Defendants have been unjustly enriched. Amisil has a financial interest in such unjust enrichment.

111. Defendants therefore hold such enrichment for the benefit of Amisil as constructive trustees, and Amisil is entitled to an accounting and to trace such enrichment to obtain the benefits of such constructive trusts.

112. Once the amount of the enrichment is ascertained, the constructive trust should be ordered to promptly deliver the proceeds of the trust to its rightful owner, Amisil.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## ELEVENTH CLAIM FOR RELIEF

**Preliminary and Permanent Injunction**
**Against All Defendants**

113. Plaintiff re-alleges paragraphs 1 through 112 of this Complaint as if fully set forth herein.

114. Unless enjoined from transferring the assets of Clarium out of the jurisdiction of this Court during the pendency of this litigation and further using the converted funds, Amisil will be irreparably harmed.

115. As set forth above, Defendants committed numerous unlawful and fraudulent acts that have resulted in seizing control of Amisil's property. Defendants have deprived Amisil of its rightful distributions and have oppressed Amisil as a minority member of Clarium.

116. Amisil has exhausted all reasonable efforts to obtain a fair resolution of this dispute. Clarium has threatened to consummate the involuntary expulsion and "conclude" Amisil's relationship with Clarium by transferring a sum that Clarium has unilaterally determined to be the value of Amisil's membership interest. Should this occur without a proper accounting, there is a risk that Amisil will neither recover the unpaid distributions nor receive fair market value of its membership interest because Defendant Thiel, the Managing Member of Clarium, maintains Clarium's accounts in Bermuda and has the resources and motivation to transfer Clarium assets out of the jurisdiction of the Court. The balance of the interim harm to Amisil if the requested injunction is not issued far outweighs any interim harm to Defendant in requiring Clarium's assets that are within the jurisdiction of this Court remain so while this litigation is pending, and prohibiting Defendants from wrongfully converting Amisil's interest in Clarium and its profits.

117. This Complaint and exhibits filed herewith establish a reasonable probability that Amisil will prevail in its claims against Defendants at trial.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**PRAYER**

WHEREFORE, Plaintiff, Amisil, prays for judgment against Defendants, and each of them, as follows:

On the First Claim for Relief

1. For general damages according to proof at trial in an amount in excess of $75,000.00;

On the Second Claim for Relief

2. For equitable relief and general damages according to proof at trial in an amount in excess of $75,000.00;

On Each of the Third through Eighth Claims for Relief

3. For a judicial determination that the Thiel Capital International, LLC, and Thiel Capital Management, LLC, Subscription and Investment Representation Agreement dated February 18, 1998, and the Operating Agreement of Thiel Capital Management, LLC, dated September 9, 1996, are valid and binding upon Amisil and Clarium;

4. For a judicial determination that the action undertaken by Defendants on July 20, 2006, to remove Amisil as a member of Clarium is null and void;

5. For specific performance of Defendants' duties under the "Operating Agreement of Thiel Capital International, LLC a Delaware Limited Liability Clarium," dated September 9, 1996, including but not limited to those pertaining to Amisil's right to receive periodic financial and ownership information regarding Clarium and right to receive distributions of Clarium's profits;

6. For general damages according to proof at trial in an amount in excess of $75,000.00;

7. For punitive and exemplary damages in an amount deemed by the trier of fact to be sufficient to punish, deter, and make an example of Defendants;

On the Ninth Claim for Relief

8. For an order enjoining Defendants from engaging in the fraudulent, unfair and unlawful conduct described herein;

9. For an order for restitution of money and/or shares of stock wrongfully withheld from Amisil by Defendants;

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

On the Tenth Claim for Relief

10. For a complete accounting of the books and records of Clarium and the Defendants to trace the distribution of assets from Clarium and Amisil's rights thereto;

11. For an order that Defendants hold amounts found due from the accounting for the benefit of the Amisil as constructive trustee and an Order that those sums be delivered to the rightful owner, Amisil;

On the Eleventh Claim for Relief

12. For a preliminary and permanent injunction prohibiting Defendants from transferring the assets of Clarium out of the jurisdiction of this Court during the pendency of this litigation and prohibiting Defendants from continuing their wrongful conversion of Amisil's interests;

On All Claims for Relief

13. For prejudgment interest in an amount according to proof at trial;

14. For attorneys' fees and costs of suit incurred herein; and

15. For such other and further relief as the Court may deem just and proper.

DATED: August 28, 2006

REED SMITH LLP

By ______________________
Harvey L. Leiderman
Attorneys for Plaintiff
Amisil Holdings Ltd.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**DEMAND FOR JURY TRIAL**

**Rule 38 of the Federal Rules of Civil Procedure**

Amisil demands a jury trial on all issues so triable.

DATED: August 28, 2006

REED SMITH LLP

By ______________________
Harvey L. Leiderman
Attorneys for Plaintiff
Amisil Holdings Ltd.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter of the litigation, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

1. Clarium Capital, LLC, a feeder fund managed by Clarium Capital Management, LLC;
2. Clarium Capital Fund, Ltd. an offshore feeder fund managed by Clarium Capital Management, LLC; and
3. Clarium Capital, Ltd., an offshore master fund managed by Clarium Capital Management, LLC.

DATED: August 28, 2006.

REED SMITH LLP

By [signature]
Harvey L. Leiderman
Attorneys for Plaintiff
Amisil Holdings Ltd.

DOCSSFO-12450529.3-TKBELL8/26/06 6:56 PM