# EXHIBIT C

| | |
|---|---|
| Investor: | AMISIL HOLDINGS LTD. |
| Contact Person: | AMIT CHOUDHURY |
| Telephone Number: | 415-616-5901 |
| Fax No.: | 415-616-5910 |
| State of Domicile: | CYPRUS |
| Subscription Amount: | $300,000 |

THIEL CAPITAL INTERNATIONAL, LLC,
A DELAWARE LIMITED LIABILITY COMPANY

THIEL CAPITAL MANAGEMENT, LLC,
A DELAWARE LIMITED LIABILITY COMPANY

# SUBSCRIPTION AND INVESTMENT REPRESENTATION AGREEMENT

THE MEMBERSHIP INTERESTS REFERRED TO IN THIS SUBSCRIPTION AND INVESTMENT REPRESENTATION AGREEMENT HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT") IN THE UNITED STATES OR THE SECURITIES LAWS OF ANY OTHER JURISDICTION. SUCH MEMBERSHIP INTERESTS ARE BEING OFFERED AND SOLD UNDER THE EXEMPTION PROVIDED BY SECTION 4(2) OF THE SECURITIES ACT AND/OR PURSUANT TO REGULATION D THEREUNDER.

THIEL CAPITAL INTERNATIONAL, LLC,
A DELAWARE LIMITED LIABILITY COMPANY

THIEL CAPITAL MANAGEMENT, LLC,
A DELAWARE LIMITED LIABILITY COMPANY

SUBSCRIPTION AND INVESTMENT REPRESENTATION AGREEMENT

TO: Thiel Capital International, LLC
Thiel Capital Management, LLC
c/o Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, California 94304-1050
Attn: Eric W. Wright, Esq.

Ladies and Gentlemen:

You have informed the undersigned that Thiel Capital International, LLC, a Delaware limited liability company (the "Fund"), and its managing member, Thiel Capital Management, LLC, a Delaware limited liability company (the "Company"), have been formed pursuant to the Delaware Limited Liability Company Act, and that the Manager of the Company is Peter Thiel (the "Manager"). The Fund is operated in accordance with its operating agreement (the "Fund Operating Agreement") substantially in the form furnished to the undersigned, and as described in the Confidential Memorandum relating to the Fund, dated May 12, 1997 (the "Confidential Memorandum"), furnished to the undersigned. The Company is operated in accordance with its operating agreement (the "Management Operating Agreement") substantially in the form furnished to the undersigned.

1. Subscription. Subject to the terms and conditions hereof, the undersigned hereby tenders this subscription (the "Subscription") in the amount set forth on the undersigned's signature page hereto for an interest in the Fund (the "Fund Membership Interest") and an interest in the Company (the "Company Membership Interest"), simultaneously with the delivery of an executed copy of this Subscription and Investment Representation Agreement (this "Subscription Agreement") as required by the Instructions to Subscribers accompanying this Subscription Agreement. The undersigned understands that, of the subscription amount indicated on the cover of this Subscription Agreement and on the signature page hereto, 99% of such amount will be the undersigned's capital contribution to the Fund and 1% of such amount will be the undersigned's capital contribution to the Company. The undersigned further understands that, for every $300,000 of capital contributions to the Fund and the Company, the undersigned will receive a 1.0% "Membership Interest" in the Company, as such term is defined in the Management Operating Agreement.

2. Acceptance of Subscription; Obligations Under Fund Operating Agreement and Management Operating Agreement. It is understood and agreed that this Subscription Agreement is made subject to the following terms and conditions:

(a) The Manager shall have the right to accept or reject this Subscription, in whole or in part, in its sole and absolute discretion and this Subscription shall be deemed to be accepted by the Manager only when the undersigned has been admitted as a member of the Fund and of the Company (a "Member") by execution of the Fund Operating Agreement and of the Management Operating Agreement.

(b) If this Subscription is accepted by the Manager and the conditions to Closing set forth in Section 3 below are satisfied, the Manager will execute, both on behalf of the Fund and of the Company and as attorney-in-fact for the undersigned, the Fund Operating Agreement and the Management Operating Agreement in substantially the form furnished to the undersigned.

(c) The undersigned hereby ratifies, adopts and accepts the Fund Operating Agreement and the Management Operating Agreement in substantially the form furnished to the undersigned. If the undersigned becomes a Member as provided for in Section 2(b), the undersigned will be bound by all the terms and provisions of the Fund Operating Agreement and the Management Operating Agreement in substantially the form furnished to the undersigned, and any amendments thereto, and will perform all obligations therein imposed upon a Member with respect to the undersigned's Fund Membership Interest and Company Membership Interest.

(d) The undersigned understands that the undersigned's Fund Membership Interest and Company Membership Interest will not be evidenced by a certificate subject to Article 8 of the Uniform Commercial Code.

3. Closing; Conditions to Closing.

(a) Time and Place of Closing. The closing of the sale and purchase of the undersigned's Fund Membership Interest and Company Membership Interest (the "Closing") will take place at the offices of Wilson Sonsini Goodrich & Rosati, 650 Page Mill Road, Palo Alto, California 94304, at such date and time as all of the conditions to the Closing set forth in Section 3(b) shall have been satisfied or waived (the "Closing Date"). The Closing shall be subject to the satisfaction or waiver (which waiver shall be in the form of a writing executed by the undersigned) of the respective conditions set forth below in this Section 3.

(b) Conditions to Closing of the Fund and the Company. The Fund's obligation to sell the Fund Membership Interest and the Company's obligation to sell the Company Membership Interest, both to be purchased by the undersigned at the Closing, are subject to acceptance by the Manager of the undersigned's Subscription, and to the fulfillment, prior to or at the Closing, of each of the following conditions:

(i) Representations and Warranties. The representations and warranties of the undersigned contained in this Subscription Agreement shall be true and correct at the Closing.

(ii) Performance. The undersigned shall have performed and complied with all conditions required by this Subscription Agreement, by the Fund Operating Agreement and by the Management Operating Agreement prior to or at the Closing, and there shall exist no condition or event which constitutes a default under the Fund Operating Agreement or under the Management Operating Agreement or which with notice or lapse of time, or both, would constitute such a default.

(iii) Proceedings and Documents. All proceedings in connection with the transactions contemplated hereby and all documents and instruments incident to such transactions shall be satisfactory in form and substance to the Fund, the Company and Wilson Sonsini Goodrich & Rosati, their counsel, and the Fund, the Company and their counsel shall have received all such counterpart originals or certified or other copies of such documents as the Fund or the Company may reasonably request.

4. Representation as to Investor Status.

(a) In order for the Fund to offer and sell the Fund Membership Interests in conformance with federal and state securities laws, and for the Company to offer and sell the Company Membership Interests in conformance with federal and state securities laws, the following information must be obtained regarding your investor status. Please initial each category applicable to you as an investor in the Fund and the Company.

__ (1) A natural person whose net worth, either individually or jointly with such person's spouse, at the time of the undersigned's purchase, exceeds $1,000,000;

__ (2) A natural person who had an income in excess of $200,000, or joint income with that person's spouse in excess of $300,000, in 1995 and 1996 and reasonably expects to have individual income reaching the same level in 1997;

__ (3) A bank as defined in Section 3(a)(2) of the Securities Act of 1933, or any savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act of 1933, whether acting in its individual or fiduciary capacity;

__ (4) A broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934;

__ (5) An insurance company as defined in Section 2(13) of the Securities Act of 1933;

__ (6) An investment company registered under the Investment Company Act of 1940 or a business development company as defined in Section 2(a)(48) of that Act;

__ (7) A Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958;

__ (8) A plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000;

__ (9) An employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of such act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

__ (10) A private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940;

✓ (11) An organization described in Section 501(c)(3) of the Internal Revenue Code, a corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the Fund Membership Interest or the Company Membership Interest, with total assets in excess of $5,000,000;

__ (12) A trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the Fund Membership Interest or the Company Membership Interest, whose purchase is directed by a sophisticated person who has such knowledge and experience in financial and business matters that such person is capable of evaluating the merits and risks of investing in the Fund and in the Company;

__ (13) An entity in which all of the equity owners qualify under any of the above subparagraphs. If the undersigned belongs to this investor category only, a list of the equity owners of the undersigned, and the investor category which each such equity owner satisfies, should be attached to this Subscription Agreement as Attachment W;

__ (14) The undersigned does not qualify under any of the investor categories defined above. IF THIS CATEGORY (14) IS CHECKED, PLEASE NOTIFY ERIC W. WRIGHT, ESQ., BY TELEPHONE AT (650) 493-9300 OR BY FACSIMILE AT (650) 493-6811 AS SOON AS POSSIBLE.

(b) The term "net worth" means the excess of total assets over total liabilities. In calculating "net worth," the undersigned may include the estimated fair market value of the undersigned's principal residence as an asset.

(c) In determining individual "income," the undersigned should add to the undersigned's individual adjusted gross income (exclusive of any spousal income) any amounts attributable to tax exempt income received, losses claimed as a limited partner in any limited partnership, deductions claimed for depletion, contributions to an IRA or Keogh retirement plan, alimony payments, and any amount by which income from long-term capital gains has been reduced in arriving at adjusted gross income and should subtract from the undersigned's individual adjusted gross income any unrealized capital gain.

(d) Indicate the form of entity of the undersigned:

_ Individual

If an individual, please check here if you are investing through an IRA (Individual Retirement Account), Keogh or other retirement plan):

______

_ Limited Partnership

_ General Partnership

X Corporation

_ Limited Liability Company

_ Revocable Trust (in Attachment X, identify each grantor and indicate under what circumstances the trust is revocable by the grantor)

_ Other Type of Trust (indicate type of trust and, for trusts other than pension trusts, name the grantors and beneficiaries in Attachment X: ______________)

_ Other form of organization (indicate form of organization: ______________________________)

(e) If the undersigned is not an individual, indicate the approximate date the undersigned's entity was formed: MAY 1997

(f) If the undersigned is not an individual, initial the appropriate blank below which correctly describes the application of the following statement to your situation: the undersigned (i) was not organized or reorganized for the specific purpose of acquiring the Fund

Membership Interest or the Company Membership Interest, (ii) has made investments prior to the date hereof, and each beneficial owner thereof has and will share in the same proportion in each investment made by the Fund or the Company, and (iii) the undersigned's investment in the Fund or the Company will not constitute more than forty percent (40%) of the undersigned's total capital:

_X_ True

____ False

If the "False" box is checked, name in Attachment Y the partners, shareholders or other persons participating in the entity, and the percentage interest which each such person has in such entity. Each participating person will be required to fill out a Subscription Agreement, including making the representations as to investor status set forth in this Section 4.

(g) If the undersigned is not an individual, initial the box below which correctly describes the application of the following statement to your situation:

The undersigned is an "investment company"[1] under the Investment Company Act , or would be an investment company but for the exemptions provided for in Sections 3(c)(1)[2] or 3(c)(7)[3] of that Act.

_____ True

__X__ False

(h) <u>If the undersigned has responded "True" to Section 4(g) above</u>, the undersigned has _____ holders of its outstanding securities (other than short-term paper).

---

1 The undersigned is an "investment company" if it (1) is or holds itself out as being engaged primarily, or proposes to engage primarily, in the business of investing, reinvesting, or trading in securities; (2) is engaged or proposes to engage in the business of issuing face-amount certificates of the installment type, or has been engaged in such business and has any such certificate outstanding; <u>or</u> (3) is engaged or proposes to engage in the business of investing, reinvesting, owning, holding, or trading in securities, and owns or proposes to acquire Investment Securities having a value exceeding 40 per centum of the value of the undersigned's total assets (exclusive of Government securities and cash items) on an unconsolidated basis. Investment Securities are defined to include all securities <u>other than</u> Government securities, securities issued by employees' securities companies (as defined in the Investment Company Act), and securities issued by majority-owned subsidiaries of the issuer which are not investment companies and are not relying on either of the exceptions from the definition of "investment company" in Sections 3(c)(1) and 3(c)(7) of the Investment Company Act. <u>Notwithstanding the foregoing, paragraphs (2) - (6) and (8) - (14) of Section 3(c) of the Investment Company Act, and rules promulgated pursuant to Section 3(a) of the Investment Company Act, contain additional exceptions from the definition of "investment company</u>."

2 Section 3(c)(1)(A) provides, in pertinent part:

"[N]one of the following persons is an investment company . . .

"(1) Any issuer whose outstanding securities (other than short-term paper) are beneficially owned by not more than one hundred persons and which is not making and does not presently propose to make a public offering of its securities. For purposes of this paragraph: . . . (A) Beneficial ownership by a company shall be deemed to be beneficial ownership by one person, except that, if the company owns 10 per centum or more of the outstanding voting securities of the issuer, and is, but for the exception provided for in this paragraph or paragraph (7), would be an investment company, the beneficial ownership shall be deemed to be that of the holders of such company's outstanding securities (other than short-term paper)."

3 Section 3(c)(7) provides, in part:

"[N]one of the following is an investment company . . . (A) Any issuer, the outstanding securities of which are owned exclusively by persons who, at the time of acquisition of such securities, are qualified purchasers, and which is not making and does not at that time propose to make a public offering of such securities."

5. Other Representations and Warranties of the Undersigned. The undersigned hereby represents and warrants to the Manager, the Fund and the Company as follows:

(a) The Fund Membership Interest and the Company Membership Interest are being acquired for the undersigned's own account for investment, with no intention of distributing or selling any portion thereof within the meaning of the Securities Act of 1933, and will not be transferred by it in violation of the Securities Act of 1933 or the then-applicable rules or regulations thereunder or any other applicable law. No one other than the undersigned has any interest in or any right to acquire the Fund Membership Interest or the Company Membership Interest. The undersigned hereby confirms and makes all of the representations and warranties contained in the Fund Operating Agreement and the Management Operating Agreement. The undersigned understands and acknowledges that the Fund or the Company will have no obligation to recognize the ownership, beneficial or otherwise, of such Fund Membership Interest or Company Membership Interest by anyone but the undersigned, except as provided in the Fund Operating Agreement and the Management Operating Agreement;

(b) The undersigned's financial condition is such that the undersigned is able to bear the risk of holding the Fund Membership Interest and the Company Membership Interest for an indefinite period of time and the risk of loss of the undersigned's entire investment in the Fund and the Company;

(c) The undersigned has received, has read and understood and is familiar with the Confidential Memorandum, the Fund Operating Agreement, the Management Operating Agreement and this Subscription Agreement;

(d) The Manager has made available all additional information which the undersigned has requested in connection with the transactions contemplated by the Confidential Memorandum, the Fund Operating Agreement and the Management Operating Agreement;

(e) No representations or warranties have been made to the undersigned by the Fund, the Company, the Manager, or any agent of the Manager other than as set forth herein or in the Confidential Memorandum;

(f) The undersigned has been afforded an opportunity to ask questions of and receive answers from the Manager concerning the terms and conditions of the Fund Operating Agreement and the purchase of the Fund Membership Interest and the terms and conditions of the Management Operating Agreement and the purchase of the Company Membership Interest and the opportunity to obtain any additional information (to the extent the Manager has such information or could acquire it without unreasonable effort or expense) necessary to verify the accuracy of information otherwise furnished by the Manager;

(g) The undersigned has investigated the acquisition of the Fund Membership Interest and the Company Membership Interest to the extent the undesigned deemed necessary or desirable and the Manager has provided the undersigned with any assistance the undersigned has requested in connection therewith;

(h) The undersigned has such knowledge and experience in financial and business matters that the undersigned is capable of evaluating the merits and risks of acquisition of the Fund Membership Interest, the Company Membership Interest and of making an informed investment decision with respect thereto;

(i) The undersigned is aware that the undersigned's rights to transfer the Fund Membership Interest and the Company Membership Interest are restricted by the Securities Act of 1933 and applicable state securities laws, the Fund Operating Agreement and the Management Operating Agreement and the absence of a market for the Fund Membership Interests and the Company Membership Interests, and the undersigned will not offer for sale, sell or otherwise transfer the Fund Membership Interest or the Company Membership Interest without complying with the provisions of the Fund Operating Agreement and the Management Operating Agreement;

(j) The undersigned has read, is familiar with and understands this Subscription Agreement, the Fund Operating Agreement and the Management Operating Agreement;

(k) The address set forth below is the undersigned's true and correct domicile;

(l) The undersigned understands that the Fund Membership Interest and the Company Membership Interest have not been registered under the Securities Act of 1933 or any state securities act in reliance on an exemption for private offerings, the availability of which depends in part upon the accuracy of the representations and warranties of the undersigned contained herein, and the undersigned acknowledges that it is purchasing an interest in the Fund and the Company without being furnished any offering literature or prospectus other than the Confidential Memorandum;

(m) The undersigned has furnished (or, prior to the Closing, will furnish) to the Manager or its agents, to the best of its knowledge and ability, any and all relevant information to assist the Manager in limiting the number of investors to fewer than one hundred beneficial owners within the meaning of the Investment Company Act;

(n) The undersigned has full power and authority to make the representations referred to herein, and to purchase the Fund Membership Interest and the Company Membership Interest pursuant to the Confidential Memorandum, the Fund Operating Agreement and the Management Operating Agreement, and to execute and deliver the Fund Operating Agreement, the Management Operating Agreement and this Subscription Agreement;

(o) The undersigned acknowledges and is aware of the following:

(i) The investment in the Fund Membership Interest and in the Company Membership Interest are speculative and involve a high degree of risk of loss of the entire investment in the Fund and in the Company;

(ii) There are substantial restrictions on the transferability of the Fund Membership Interest and the Company Membership Interest; the Fund Membership Interest and the Company Membership Interest will not be, and investors in the Fund and the Company have no rights to require that the Fund Membership Interests and the Company Membership Interests be, registered under the Securities Act of 1933; there will be no public market for the Fund Membership Interest and the Company Membership Interest; the undersigned may not be able to avail itself of the provisions of Rule 144 adopted by the Securities and Exchange Commission under the Securities Act of 1933 with respect to the resale of the Fund Membership Interest and the Company Membership Interest, and accordingly, may have to hold the Fund Membership Interest and the Company Membership Interest indefinitely, and it may not be possible for the undersigned to liquidate the investment in the Fund and the Company;

(iii) No federal or state agency has made any finding or determination as to the fairness of the terms of the offering and sale of the Fund Membership Interest or of the Company Membership Interest, or of the Fund Operating Agreement or of the Management Operating Agreement;

(p) The Manager does not intend to register under the United States Investment Advisers Act of 1940, as amended (the "Advisers Act"), or any other statutes of any jurisdiction applicable to investment advisers. The undersigned acknowledges, however, that the Manager is relying upon exemptions from various provisions of the Advisers Act (including prohibitions upon certain types of advisory fees) and that the availability of one or more of such exemptions may depend upon the truth of the representations and warranties of the undersigned set forth in this Section 5(p). Accordingly, the undersigned represents and warrants to the Fund, the Company and the Manager that:

(i) the undersigned understands the financial arrangement between the Fund, the Company and the Manager and the risks associated therewith as disclosed in the Confidential Memorandum;

(ii) if the undersigned is not a natural person, the representative of the undersigned whose signature appears on the signature page of this Subscription Agreement qualifies as a client's independent agent under Rule 205-3(g)(4) of the Advisers Act, and the undersigned is an eligible client because (A) the undersigned entity is none of (1) an investment company registered under the Investment Company Act of 1940 (or a company that is required to be registered under the Investment Company Act of 1940 but is not registered), (2) an entity which would be defined as an investment company under Section 3(a) of the Investment Company Act of 1940 (<u>e.g.</u>, an entity

primarily engaged in investing, owning, holding or trading in securities), but for the exclusion from such definition provided by Section 3(c)(1) of the Investment Company Act of 1940 (which Section provides an exclusion from the definition of investment company for entities which have not publicly offered their securities and whose outstanding securities are beneficially owned by not more than one hundred persons), or (3) a business development company as defined in Section 202(a)(22) of the Advisers Act, or (B) each of the undersigned's equity owners has a net worth in excess of $1,000,000 (which, in the case of a natural person, may include assets held jointly with such person's spouse) and none of the undersigned's equity owners is an entity described in (A)(1), (2) or (3) of this Section 5(p)(ii) unless each of such entity's equity owners meets the requirements of this Section 5(p)(ii)(B);

(iii) the undersigned understands that the Incentive Allocation (as defined in the Fund Operating Agreement) may create an incentive for the Manager to cause the Fund to make investments that are riskier or more speculative than would be the case in the absence of such Incentive Allocation;

(iv) the undersigned understands that for purposes of determining payments to the Manager, valuation of securities for which market quotations are not readily available will be determined by the Manager in its sole discretion without any independent determination.

The foregoing representations and warranties are true and accurate as of the date hereof and shall be true and accurate as of the Closing Date and shall survive such date. ***If in any respect such representations and warranties shall not be true and accurate prior to or at the Closing, the undersigned shall give immediate notice of such fact to the Manager in c/o Wilson Sonsini Goodrich & Rosati, 650 Page Mill Road, Palo Alto, California 94304 (Fax: (650) 493-6811), Attn: Eric W. Wright, Esq., by telex, telegram or facsimile with written confirmation of receipt, specifying which representations and warranties are not true and accurate and the reasons therefor.***

6. Indemnification. The undersigned acknowledges that the undersigned understands the meaning and legal consequences of the representations and warranties made by the undersigned herein, and that the Manager is relying on such representations and warranties in making its determination to accept or reject this Subscription. The undersigned hereby agrees to indemnify and hold harmless the Fund, the Company, the Manager and if at any time the Manager is an entity, the Manager's members, partners (general and limited), directors, officers or employees from and against any and all loss, damage or liability due to or arising out of a breach of any representation or warranty of the undersigned contained in this Subscription Agreement.

7. Transferability. The undersigned agrees not to transfer or assign this Subscription Agreement, or any interest herein, and further agrees that the assignment and transferability of the Fund Membership Interest and the Company Membership Interest acquired pursuant hereto shall be made only in accordance with the Fund Operating Agreement and the Management Operating Agreement.

8. No Revocation. The undersigned agrees that this Subscription Agreement and any agreement of the undersigned made hereunder is irrevocable, and that this Subscription Agreement shall survive the death or disability of the undersigned, except as provided below in Section 9.

9. Termination of Agreement. If the Closing does not take place as contemplated by Section 3(a) or if this Subscription is rejected by the Manager, then and in any such event this Subscription Agreement shall be null and void and of no further force and effect, and no party shall have any rights against any other party hereunder or under the Fund Operating Agreement or the Management Operating Agreement, and the Manager shall promptly return or cause to be returned to the undersigned this Subscription Agreement.

10. Notices. All notices or other communications given or made hereunder shall be in writing and shall be delivered or mailed by registered or certified mail, return receipt requested, postage prepaid, or delivered by telex or telegram or facsimile with written confirmation of receipt to the undersigned at the address set forth below and to the Manager in c/o Wilson Sonsini Goodrich & Rosati, 650 Page Mill Road, Palo Alto, California 94304 (Fax: (650) 493-6811), Attn: Eric W. Wright, Esq., or at such other place as the Manager may designate by written notice to the undersigned.

11. Power of Attorney.

(a) By executing this Subscription Agreement, the undersigned is hereby granting to the Manager a special power of attorney, making, constituting and appointing the Manager as the undersigned's attorney-in-fact, with full power of substitution and with power and authority to act in the undersigned's name and on the undersigned's behalf to execute, acknowledge and swear to the execution, acknowledgment and filing of the following documents:

(i) The Fund Operating Agreement, in the form provided to the undersigned (with the exception of Schedule A thereto), and the Certificate of Formation, as well as any amendments to the foregoing which, under the laws of the State of Delaware or the laws of any other jurisdiction, are required to be filed or which the Manager deems advisable to file and are permitted by the terms of the Fund Operating Agreement;

(ii) Any other instrument or document which may be required to be filed by the Fund or the Company under the laws of any jurisdiction or by any governmental agency, or which the Manager deems advisable to file; and

(iii) Any instrument or document which may be required to effect the continuation of the Fund or the Company, the admission of an additional or substituted Member, or the dissolution and termination of the Fund or the Company (provided such continuation, admission or dissolution, and termination are in accordance with the terms of the Fund Operating Agreement and the Management Operating Agreement).

(b) The special power of attorney being granted hereby by the undersigned:

(i) is a special power of attorney coupled with an interest, is irrevocable, and shall survive the death or legal incapacity of the undersigned;

(ii) may be exercised by the Manager signing individually for each Member or for all of the Members executing any particular instrument;

(iii) shall survive an assignment by the undersigned of its interest in the Fund or the Company except that, where the assignee of the interest owned by a Member has been approved by the Manager for admission to the Fund or the Company as a substituted Member, the special power of attorney shall survive such assignment for the sole purpose of enabling the Manager to execute, acknowledge and file any instrument or document necessary to effect such substitution.

(c) In the event of any conflict between the Fund Operating Agreement and any document filed pursuant to this power of attorney, the Fund Operating Agreement shall control.

(d) In the event of any conflict between the Management Operating Agreement and any document filed pursuant to this power of attorney, the Management Operating Agreement shall control.

12. Survival of Agreements, Representations and Warranties, etc. All agreements, representations and warranties contained herein or made in writing by or on behalf of the Fund, the Company or the Manager in connection with the transactions contemplated by this Subscription Agreement shall survive the execution and delivery of this Subscription Agreement, any investigation at any time made by the undersigned or on the undersigned's behalf, and the sale and purchase of the undersigned's Fund Membership Interest and the Company Membership Interest and payment therefor.

13. Expenses. The undersigned will pay the undersigned's own expenses relating to this Subscription Agreement and the purchase of the undersigned's Fund Membership Interest and the Company Membership Interest hereunder. The Fund shall bear expenses relating to this Subscription Agreement and the purchase of the undersigned's Fund Membership Interest and Company Membership Interest hereunder as set forth in the Fund Operating Agreement and the Management Operating Agreement.

14. Amendments. Neither this Subscription Agreement nor any term hereof may be changed, waived, discharged or terminated orally but only with the written consent of the undersigned and the Fund or the Company.

15. Counterparts. This Subscription Agreement may be executed in any number of counterparts, each of which shall be an original but all of which taken together shall constitute one agreement.

16. Governing Law. This Subscription Agreement and all amendments hereto shall be governed by and construed in accordance with the laws of the State of Delaware as such laws are applied to agreements entered into and to be performed entirely within Delaware by Delaware residents.

INDIVIDUALS

Dated: ____________________, 1997

______________________________
SIGNATURE

______________________________
SUBSCRIPTION AMOUNT

99% of this amount will be invested in the Fund directly; the remaining 1% will be used to purchase an interest in the Company

______________________________
NAME (PLEASE PRINT)

RESIDENCE ADDRESS:

______________________________
NUMBER AND STREET

______________________________
CITY/STATE/ZIP CODE

______________________________
SOCIAL SECURITY NUMBER

(Please have signature notarized on following page or, if the jurisdiction where you are located provides for a different form of notarization, please have signature notarized on such form and attach such form to this Subscription Agreement.)

ACCEPTED BY:

THIEL CAPITAL INTERNATIONAL, LLC
By: THIEL CAPITAL MANAGEMENT, LLC
Managing Member

By: ______________________________
Peter Thiel, Managing Member

STATE OF )
) ss.:
COUNTY OF )

On ____________, 1997, before me, ______________________________, personally appeared ______________________________, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: ________________________ (Seal)
Notary Public

CORPORATIONS, PARTNERSHIPS, TRUSTS OR OTHER ENTITIES

Dated: FEBRUARY 27, ~~1997~~ 1998

[signature]
SIGNATURE

$300,000
SUBSCRIPTION AMOUNT

99% of this amount will be invested in the Fund directly; the remaining 1% will be used to purchase an interest in the Company

AMIT CHOUDHURY; SENIOR VICE PRESIDENT
NAME (PLEASE PRINT)

RESIDENCE ADDRESS:

CLARENDON HOUSE
2 CHURCH STREET
NUMBER AND STREET

HAMILTON HM DX BERMUDA
CITY/STATE/COUNTRY/ZIP CODE

N/A
FEDERAL I.D. NUMBER
(if a United States investor)

(Please have signature notarized on following page or, if the jurisdiction where you are located provides for a different form of notarization, please have signature notarized on such form and attach such form to this Subscription Agreement.)

ACCEPTED BY:

THIEL CAPITAL INTERNATIONAL, LLC
By: THIEL CAPITAL MANAGEMENT, LLC
Managing Member

By: Peter Thiel
Peter Thiel, Managing Member

ISLANDS
~~STATE~~ OF BERMUDA )
CITY ) ss.:
~~COUNTY~~ OF HAMILTON )

On FEBRUARY 27 1998, before me, JAMES M. MACDONALD, personally appeared AMIT CHOUDHURY, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: [signature]
Notary Public

REVENUE BERMUDA

ATTACHMENT W

# ATTACHMENT X

ATTACHMENT Y

ATTACHMENT Z