Howard S. Caro (SBN 202082)
Cecilia Y. Chan (SBN 240971)
Nathaniel R. Spencer-Mork (SBN 226886)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA 94104-2878
Telephone: +1.415.772.6000
Facsimile: +1.415.772.6268
Howard.Caro@hellerehrman.com
Cecilia.Chan@hellerehrman.com
Nate.SpencerMork@hellerehrman.com

Robert B. Hawk (SBN 118054)
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, CA 94025-3506
Phone: +1.650.324.7000
Facsimile: +1.650.324.0638
Robert.Hawk@hellerehrman.com

Attorneys for Defendants
Clarium Capital Management, LLC, Peter Thiel, Jason Portnoy and Mark Woolway

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMISIL HOLDINGS LTD., a Cyprus Corporation,<br><br>                            Plaintiff,<br><br>   v.<br><br>CLARIUM CAPITAL MANAGEMENT, LLC, et al.,<br><br>                            Defendants. | Case No.: C 06 5255 MJJ<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION PENDING ARBITRATION; MEMORANDUM IN SUPPORT**<br><br>**9 U.S.C. §§ 3, 4**<br><br>[Motion to Enlarge Time to Respond to Complaint Filed Concurrently]<br><br>Hearing Date:  October 24, 2006<br>Time:               9:30 a.m.<br>Courtroom:       11<br><br>The Honorable Martin J. Jenkins |

Heller Ehrman LLP

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 24, 2006, at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 11 of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, California, Defendants Clarium Capital Management, LLC, Peter Thiel, Jason Portnoy and Mark Woolway (collectively "Defendants") will present their Motion to Compel Arbitration and to Stay Litigation Pending Arbitration ("Motion") pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4.  Specifically, Defendants request an order compelling Plaintiff Amisil Holdings, Ltd. to arbitrate all claims in this action.  Defendants also request a stay of this action pending arbitration.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Howard S. Caro, along with the exhibit thereto, all pleadings and papers on file in this action, such matters of which the Court may take judicial notice, and such additional evidence and authority as may be offered at the time of oral argument, if any.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This action arises from an attempt by Plaintiff Amisil Holdings, Ltd. ("Amisil") to reap a windfall based on allegations that it made a small investment years ago in Defendant Clarium Capital Management, LLC ("Clarium").  Amisil's asserted claims against Clarium and three of its officers are founded on Clarium's 1996 Operating Agreement, which unambiguously requires arbitration of all claims "arising out of or relating to" the Agreement.  Accordingly, the Federal Arbitration Act requires that Amisil pursue those claims via arbitration and not in this Court.

Despite the plain language of the Operating Agreement and Clarium's requests that Amisil abide by it, Amisil has refused to arbitrate its claims.  This refusal violates the arbitration provision of the Operating Agreement.  Amisil's refusal also violates basic principles of equity, by asking the Court to enforce only the contractual provisions of Amisil's choosing, while relieving Amisil of any obligation to make good on its contractual duties.  Defendants Clarium, Peter Thiel, Jason Portnoy and Mark Woolway (the "Clarium Defendants") therefore move this Court pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, to enter an order compelling Amisil to arbitrate, and to stay this action pending arbitration of Amisil's claims.

## II.  FACTS

Amisil alleges that Defendants have "oppress[ed] Amisil's rights as holder of a minority membership interest in Clarium" — alleged rights defined by the Operating Agreement.  Compl. ¶ 2. On this basis, Amisil asserts claims for securities fraud under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder and under the Investment Advisers Act of 1940; for common law fraud, conversion, breach of fiduciary duty, conspiracy, breach of contract, breach of implied covenant of good faith and fair dealing; for violation of California Business and Professions Code § 17200 *et seq.*; for accounting and constructive trust; and for injunctive relief. Compl. ¶ 3.

Heller
Ehrman LLP

1
NOTICE OF MOTION & MOTION TO COMPEL ARBITRATION; MEM. OF P&A IN SUPPORT, Case No. C 06-5255 MJJ

As alleged, Amisil's claims arise from and relate to the Operating Agreement, a version of which is attached to the Complaint.[1] Amisil asserts that it is a party to the Operating Agreement and to a related Subscription Agreement. Compl. ¶ 93. Amisil contends that Defendants have violated the Operating Agreement by expelling Amisil from membership in Clarium, have deprived Amisil of the benefits of its purported ownership interest in Clarium, and have violated provisions of the Operating Agreement relating to access to Clarium's records. *Id*. ¶¶ 14, 39, 46-47. Amisil seeks damages for these violations of the Operating Agreement under a number of legal theories, and seeks a "judicial determination that… the Operating Agreement [is] valid and binding on Amisil and Clarium." Compl. Prayer ¶¶ 1-3, 6-7.

The Operating Agreement includes the following provision:

> Except as otherwise specifically provided in this Agreement, the Members shall make a reasonable attempt to resolve any controversy or claim arising out of or relating to this Agreement through non-binding mediation. Any such controversy or claim not resolved after such reasonable attempt shall be resolved through arbitration conducted in accordance with the rules of the American Arbitration Association; and judgment upon an award arising in connection therewith may be entered in any court of competent jurisdiction.

Clarium Operating Agreement § 10.17(a) (Compl. Ex. B).

When a dispute arose between the parties regarding Amisil's alleged ownership interest in Clarium, Clarium proposed to resolve the dispute through an independent appraisal process and, if that process failed, to work with Amisil in bringing the matter to arbitration pursuant to the Operating Agreement. Amisil abruptly abandoned the appraisal process and rebuffed offers to arbitrate by improperly filing this suit. Pursuant to the terms of Section 10.17 of the Operating Agreement, on September 6, 2006, Clarium formally demanded that Amisil agree to submit its claims to arbitration no later than September 13,

---

[1] Defendants do not concede that this version of the Operating Agreement governs the parties' respective rights and obligations. Nevertheless, it is the document pursuant to which Plaintiff purports to bring its claims. For that reason, and because Amisil agreed to be bound by the arbitration clause of this version of the agreement and the language of the arbitration clause was not changed in other versions of the same agreement, Defendants cite to the September 9, 1996 Clarium Operating Agreement attached to the Complaint in support of this Motion.

2006. Declaration of Howard Caro ("Caro Decl.") ¶ 2, Ex. A. To date, Amisil has not responded to this demand. *Id*. ¶ 3.

With respect to individual defendants Messrs. Thiel, Portnoy and Woolway, it is important to note that the Operating Agreement protects nonsignatory "Indemnified Persons" — a term defined to include "employees or other agents of the Company" — from personal liability to "Members [of Clarium] for any act or omission concerning the Company." Operating Agreement § 9.1. The Operating Agreement also provides for indemnification of such Indemnified Persons, conferring on them, too, the right to petition for arbitration. *Id*. § 9.2(a).

## III.   ARGUMENT

### A.   Governing Legal Standards Under the Federal Arbitration Act

The Federal Arbitration Act ("FAA") allows a party to an arbitration agreement to petition a federal court to compel another party to comply with that agreement. 9 U.S.C. § 4. The FAA applies to any contract in "commerce among the several States or with foreign nations." *Id*. § 1. The FAA reflects a strong federal policy favoring arbitration of any dispute arguably subject to an arbitration agreement, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (citation omitted). Indeed, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates" an order compelling arbitration "on issues as to which an arbitration agreement has been signed." *Id*.

### B.   The Express Terms of the Agreement Require Arbitration

#### 1.   The Broad Terms of the Arbitration Clause Encompass All Claims Asserted in Amisil's Complaint Against Clarium.

As a contract between citizens of different states and citizens of foreign countries (Compl. ¶¶ 4, 7-8), the Operating Agreement is subject to the FAA. 9 U.S.C. § 1. The arbitration provision in the Clarium Operating Agreement attached as Exhibit B to the Complaint provides that "[a]ny … controversy or claim … shall be resolved through arbitration conducted in accordance with the rules of the American Arbitration

Heller
Ehrman LLP

3

Association…." Clarium Operating Agreement § 10.17(a) (Compl. Ex. B). Arbitration clauses are liberally construed, *Simula*, 175 F.3d at 720, particularly where, as in this case, a clause encompasses disputes "*arising out of or relating to*" the contract. *Schoenduve Corp. v. Lucent Technologies, Inc.*, 442 F.3d 727, 732 (9th Cir. 2006) (phrase "arising out of or relating to" in arbitration agreement is intended "to reach all aspects of the [parties'] relationship"). The clause here is more than broad enough to cover all Amisil's claims. *Id.*[2]

Arbitrability of claims does not depend on the legal theories asserted in the complaint. Rather, if the *factual* allegations of the complaint "touch matters covered by the contract containing the arbitration clause," the dispute must be arbitrated, regardless of the legal basis for the claim. *Simula,* 175 F.3d at 721-25 (compelling arbitration of antitrust, trademark, misappropriation, and defamation claims requiring interpretation of agreement). If the law were otherwise, plaintiffs could plead around arbitration agreements simply by manipulating the form of their complaints. *Kroll v. Doctors' Assocs., Inc.*, 3 F.3d 1167, 1170 (7th Cir. 1993).

Amisil's claims are squarely founded on the Operating Agreement, and as a factual and legal matter arise from that document. Amisil asserts that it is a party to the Operating Agreement. Compl. ¶ 93. It seeks "certain benefits for its ownership interest… [p]ursuant to Clarium's Operating Agreement." Compl. ¶ 14. It claims to have requested an inspection of Clarium's books under the terms of the Operating Agreement. Compl. ¶ 39. It relies on provisions of the Operating Agreement concerning "Allocations of Clarium

---

[2] The Supreme Court has expressly held that Amisil's claim under section 10(b) of the Securities Exchange Act and Rule 10b-5 is arbitrable. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987) (Securities Exchange Act § 10(b) and Rule 10b-5 claims arbitrable); *accord Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 485-86 (1989) (claims under Securities Act of 1933 arbitrable). We are not aware of any law regarding whether claims under the Investment Advisors Act of 1940 ("1940 Act") are arbitrable. Presumably this is because the Supreme Court has concluded that there is no private right of action for damages under the antifraud provisions of the 1940 Act, only a right to void contracts. *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 24 (1979). However, Amisil seeks only damages and does not seek to void the contract. Compl. ¶ 67, Prayer ¶ 2. If for any reason these claims are not resolved through arbitration, Defendants reserve the right to move to dismiss on these and all other grounds under Federal Rule of Civil Procedure 12(b).

Profits and Losses" and "Discretionary Distributions." Compl. ¶¶ 46-47. In its prayer for relief, Amisil seeks "a judicial determination that … the Operating Agreement … dated September 9, 1996 [is] valid and binding upon Amisil and Clarium" under its claims for fraud, conversion, breach of fiduciary duty, conspiracy, breach of contract, and breach of implied covenant of good faith claims. Compl. Prayer ¶ 3. In short, Amisil's claims "aris[e] out of or relat[e] to [the] Agreement." They are therefore subject to arbitration pursuant to the terms of the Operating Agreement.

Additionally, because Amisil seeks to enforce a contract to which it is a party, it must accept the logical and equitable consequences of its claims: that the contractual arbitration provision applies to Amisil and should be enforced by the Court. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006).

### 2. Amisil Must Arbitrate Its Claims Against the Individual Defendants.

Amisil may argue that Messrs. Thiel, Portnoy and Woolway, as nonsignatories, cannot enforce the arbitration provision. Any such argument is without merit. It is well established that nonsignatories can enforce an agreement to arbitrate against a signatory in proper circumstances. *See id.* (nonsignatories can enforce arbitration agreements on the basis of, *inter alia*, agency and estoppel); *see also Leitzia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986) (nonsignatories can enforce arbitration provisions "under ordinary contract and agency principles."). Allowing nonsignatories to enforce arbitration agreements "is an outgrowth of the strong federal policy favoring arbitration." *Id.* at 1188.

As agents of Clarium, Thiel, Portnoy and Woolway have standing to enforce the arbitration provision against Amisil. Indeed, this case is on all fours with the facts of *Leitzia*. In *Leitzia*, a plaintiff investor sued his brokerage company and two of its employees for their handling of his brokerage account. The court held that the employees could enforce the arbitration provision, especially where the signatory employer "has clearly indicated its intention to protect its employees" through the operative agreement. *Id.*

at 1188. There is no meaningful difference between the facts of this case and the facts of *Leitzia*. Thiel, Portnoy and Woolway occupy the same position as agents and co-defendants of the signatory, and indeed, the terms of the Operating Agreement that Amisil agreed to and relies on expressly protect Clarium's employees. *See* Operating Agreement § 9.1 (officers are not personally liable to members of Clarium "for any act or omission concerning the Company"); Operating Agreement § 9.2(a) ("the Company shall indemnify and hold … harmless" its officers and directors). Accordingly, Thiel, Portnoy and Woolway can enforce the arbitration provision as agents of a signatory.

Just as Amisil should be equitably estopped from resisting Clarium's arbitration request, so it should be estopped from resisting demands to arbitrate by nonsignatories. "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Comer*, 436 F.3d at 1101 (internal quotes and citations omitted). Thus, "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against a nonsignatory …. arbitration is appropriate." *Hawkins v. KPMG LLP*, 423 F. Supp. 2d 1038, 1050 (N.D. Cal. 2006); *see also Fujian Pacific Elec. Co. v. Bechtel Power Corp.*, No. C 04-3126, 2004 WL 2645974, at * 5 (N.D. Cal. Nov. 19, 2004), *citing MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999). In other words, a signatory "cannot… have it both ways: it cannot … seek to hold the non-signatory liable pursuant to duties imposed by the agreement… but on the other hand, deny the arbitration provision's applicability because the defendant is a non-signatory. [T]o allow such inconsistent positions would be inequitable, to say the least." *Fujian Pacific*, 2004 WL 2645974, at *5. Amisil would take just such an inconsistent position if it were to assert that Messrs. Thiel, Portnoy and Woolway cannot enforce the arbitration agreement, and it should be estopped from doing so.

### C. This Action Should be Stayed Pending Arbitration.

The Clarium Defendants respectfully request that these proceedings be stayed while the Court resolves this motion, and during the pendency of the arbitration. If the Court

determines that the dispute is referable to arbitration, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.  Issuance of a stay is not discretionary; if the dispute is arbitrable and a party applies for a stay, the stay must be granted. *Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir. 1993).  As this dispute is subject to the arbitration provision in the 1996 Operating Agreement, Defendants are entitled to a stay of the case until arbitration is completed.

## IV.   CONCLUSION

For the reasons stated above, the Clarium Defendants respectfully request that the Court compel Amisil to arbitrate the instant dispute and that the instant case be stayed pending that arbitration.

September 14, 2006                              Respectfully submitted,

HELLER EHRMAN LLP


By _____/s/ Howard S. Caro_____
       HOWARD S. CARO

Attorneys for Defendants
CLARIUM CAPITAL MANAGEMENT, PETER THIEL, JASON PORTNOY and MARK WOOLWAY

Heller Ehrman LLP

7
NOTICE OF MOTION & MOTION TO COMPEL ARBITRATION; MEM. OF P&A IN SUPPORT, Case No. C 06-5255 MJJ