Harvey L. Leiderman (SBN 55838)
Email: hleiderman@reedsmith.com
Tita K. Bell (SBN 206735)
Email: tkbell@reedsmith.com
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111-3922
Mailing Address:
P.O. Box 7936
San Francisco, CA 94120-7936
Telephone:    415.543.8700
Facsimile:    415.391.8269

Daniel R. Formeller (admitted *pro hac vice*)
Email: dformeller@tsmp.com
Basileios Katris (admitted *pro hac vice*)
Email: bkatris@tsmp.com
Tressler, Soderstrom, Maloney & Priess
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606-6308
Telephone:    312.627.4000
Facsimile:    312.627.1717

Attorneys for Plaintiff Amisil Holdings Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMISIL HOLDINGS LTD., a Cyprus Corporation,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CLARIUM CAPITAL MANAGEMENT, LLC f/k/a/ THIEL CAPITAL MANAGEMENT, LLC, a Delaware Limited Liability Company, PETER ANDREAS THIEL, a California resident, JASON PORTNOY, a California resident, MARK WOOLWAY, a California resident,<br><br>　　　　　　Defendants. | Case No.: C 06 5255 MJJ<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION PENDING ARBITRATION**<br><br>9 U.S.C. §§ 3, 4<br><br>Hearing Date:　　October 24, 2006<br>Time:　　　　　　9:30 a.m.<br>Courtroom:　　　　11<br><br>Honorable Martin J. Jenkins |

Plaintiff Amisil Holdings Ltd. ("Amisil") hereby submits its Opposition to Defendants' Motion to Compel Arbitration and to Stay Litigation Pending Arbitration as follows:

## I. INTRODUCTION AND FACTS

As alleged in the Complaint, through an elaborate shell game, defendants have confiscated Amisil's investment in Clarium Capital Management, LLC ("Clarium") and appropriated Amisil's share of the company's profits for themselves. Amisil is a long-time investor in Clarium, a registered investment adviser that reportedly manages $2 billion in investors' funds. Defendant Peter A. Thiel ("Thiel") is Clarium's only other member. He is the shell company's Managing Member, and owns over 98% of its interests. Thiel dominates Clarium and its investment portfolio. Thiel *is* Clarium. Through a pattern and practice of unlawful activity, Thiel, assisted by other individual co-defendants, has oppressed Amisil's rights as holder of a minority membership interest in Clarium while allowing Thiel to reward himself with tens of millions of dollars in distributions from the company. In the last year alone Thiel and his colleagues distributed over $60 million out of Clarium to themselves – but not a penny to Amisil.

In essence, Thiel employed a three-part scheme to "hide the money" from Amisil: first, make no distributions over eight years to Amisil; second, purport to buy out Amisil's interest at a unilaterally set price; and third, prevent Amisil's access to Clarium's books and records so that Amisil would not be able to determine the true value of its membership interest. In response to an inquiry from Amisil this year as to the extent and value of its membership interest, Thiel (through Clarium), simply issued a notice claiming to *expel* Amisil as a member of Clarium and confiscating Amisil's interest, at a fraction of its value. In short, Thiel, et al. have fraudulently seized control over Amisil's property, deprived Amisil of its rightful distributions, and oppressed Amisil as a minority member of Clarium.

For the past several months, Amisil attempted in good faith to mediate its dispute with Thiel, Clarium and the other defendants. However, it became clear that the third party evaluation process proposed by Thiel was part of a continued strategy to block access to Clarium's books and records and therefore prevent Amisil from determining with certainty the true value of its eight-year

investment. These are the facts that compelled Amisil to initiate legal proceedings against the defendants.

## II. STATUS OF THE CASE

Amisil has brought claims for violations of federal securities laws, fraud, conversion, breach of contract, breach of implied covenant of good faith and fair dealing, unfair business practices (Cal. Bus. & Prof. Code § 17200 et seq.), and accounting and constructive trust against all defendants, and claims for breach of fiduciary duty and conspiracy to commit fraud and to breach fiduciary duties against defendants Thiel, Portnoy and Woolway. All of Amisil's claims arise out of a manipulative scheme perpetrated by Thiel and the co-defendants from 1998 to the present, as alleged in the Complaint.

In response, defendants filed a Motion to Compel Arbitration of Amisil's claims against all defendants ("Motion") citing Section 10.17(a) of Clarium's Operating Agreement dated September 1996. Complaint, Ex. B. The parties who entered into the Operating Agreement were Amisil and Clarium. *See* Complaint, Ex. C, Section 2 and p. 17. Thiel, Portnoy and Woolway are not signatories to the contract. *Id.*

On September 6, 2006, seven days after Clarium was served, counsel for all defendants demanded that Amisil agree to submit its claims to arbitration. On September 12, 2006, Amisil, through its counsel of record, responded that it was open to various methods for resolving the dispute including arbitration, provided Amisil was assigned access to the truth.[1]

## III. ARGUMENT
### A. General Principles of the Federal Arbitration Act Are Insufficient Alone to Compel Arbitration in This Case

At its core, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986). The mandate of the Federal

---

[1] Defendant's counsel's statement in his declaration in support of this Motion, asserting that "[t]o date, Amisil has not responded to this demand" (Declaration of Howard S. Caro, ¶ 3), is wrong. *See* Declaration of Cecilia Chan in Support of Defendant's Motion to Enlarge Time to Respond to the Complaint, Exhibit B [Docket # 17].

Arbitration Act ("FAA") directing the district court to stay proceedings pending arbitration applies only to claims "as to which an arbitration agreement has been signed." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). Moreover, "[t]he district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Three Valleys Municipal Water Dist. v. E. F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991).

### B. Defendants Thiel, Portnoy and Woolway Have No Right to Force Amisil to Arbitrate Any of Its Claims Against Them

The individual defendants, Thiel, Portnoy and Woolway, have no basis for attempting to enforce the arbitration provision in the 1996 Operating Agreement because Amisil has not agreed to waive its right to jury trial for the personal claims it now asserts against them. It is well settled under the Federal Arbitration Act that "[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *Three Valleys Municipal Water Dist.*, 925 F.2d at 1141 (9th Cir. 1991). The contractual right to arbitration may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration. *Lorber Indus. of California v. Los Angeles Printworks Corp.*, 803 F.2d 523, 525 (9th Cir. 1986). Defendants Thiel, Portnoy and Woolway were not identified as signatories to the contract and have not shown that Amisil, or Clarium for that matter, intended to submit to arbitration the claims that Amisil has alleged against them.

Thiel, Portnoy and Woolway cannot assert the right to compel arbitration and stay the current proceedings based simply on a broad federal policy favoring arbitration. The Ninth Circuit has made clear that "[t]he right to compel arbitration stems from a contractual right . . . [which] may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Britton v. Co-Op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993) (citations omitted). "[R]equiring that arbitration rest on a consensual foundation is wholly consistent with federal policy [favoring arbitration]." *McCarthy v. Azure*, 22 F.3d 351, 355 (1st Cir. 1994); *see also Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002) (noting "the reach of an arbitration

agreement . . . is a different matter from the question of who may invoke its protections."). The individual defendants must present concrete evidence that the parties intended to permit these non-signatories to avoid the judicial forum where their individual acts of fraud are the basis of the claims. See *Britton*, 4 F.3d at 745 (stating "the law requires a showing that the *parties to the contract* intended to benefit a third party") (emphasis in original); *see also McCarthy*, 22 F.3d at 362 (observing "[b]ecause third-party beneficiary status constitutes an exception to the general rule that a contract does not grant enforceable rights to nonsignatories, a person aspiring to such status must show with special clarity that the contracting parties intended to confer a benefit on him") (citations omitted). Nothing in the Operating Agreement demonstrates Amisil's intention to confer the benefit of arbitration on these non-signatory defendants.

Defendants' attempt to analogize this case to *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185 (9th Cir. 1986), by pointing to the indemnity clause in the Operating Agreement is misguided. One federal court has already refused to indulge a similar attempt to bring non-signatories under the umbrella of *Letizia*. See *CBS, Inc. v. Snyder*, 798 F. Supp. 1019, 1027 (D.N.Y. 1992). In *Snyder* the court rejected a plaintiff's attempt to compel arbitration against non-signatory employees of CBS based on the presence of an indemnity clause in the employees' contracts. *Id.*[2] In so holding the court stated "[t]here is no reason to believe that in agreeing to indemnify certain of its employees, CBS was also manifesting an intent to benefit and protect those employees through the arbitration provision." *Id.* at 1027. Defendants Thiel, Portnoy and Woolway may not hide behind Clarium's indemnity clause to "avail [themselves] of the corporation's right to repair to an arbitral forum and thereby avoid a jury trial." *McCarthy*, 22 F.3d at 363.

**More fundamentally, the contractual indemnity provision reveals that Clarium never intended to protect defendants Thiel, Portnoy and Woolway for their personal acts of material**

---

[2] The fact that *Snyder* involved a signatory's attempt to compel arbitration against a non-signatory is a distinction without difference. To the extent that a party may not compel a signatory's agent to arbitrate, likewise the non-signatory agent cannot be permitted to compel arbitration in the same circumstances. To hold otherwise would permit "an agent for a disclosed principal [to] enjoy the benefits of the principal's arbitral agreement . . . [yet] shoulder none of the corresponding burdens." *McCarthy*, 22 F.3d at 361. In the words of the First Circuit, these defendants should not, from a policy standpoint, be permitted to "run with the hare and hunt with the hounds." *Id.*

misconduct, which Amisil has alleged in the Complaint. *See Letizia*, 802 F.2d at 1188. The indemnity provision in the Operating Agreement, Exhibit B to the Complaint, provides that "*[i]n the absence of Material Misconduct* . . . the Company shall indemnify and hold such Indemnified Person harmless." Operating Agreement § 9.2(a) (emphasis added). With respect to indemnified persons, "Material Misconduct" is defined in the Operating Agreement as "gross negligence, a willful breach of this Agreement, fraud, breach of a fiduciary duty arising out of this Agreement, or a commission of a felony." *Id*. § 1. Amisil's complaint clearly alleges that the individual defendants Thiel, Portnoy, and Woolway committed acts of fraud and breached their fiduciary duty. Thus, unlike the agreement analyzed by the court in *Letizia*, Clarium's Operating Agreement in fact *limits* the claims subject to indemnity, and likewise establishes that Clarium actually intended that these individuals' acts of material misconduct *not* be subject to arbitration. *See McCarthy*, 22 F.3d at 355 (holding that under general contract principles a non-signatory's right to compel arbitration is "ordinarily a function of the parties' intent as expressed in the language of the contract documents"). *Letizia* is distinguishable on precisely this ground.

The acts of "Material Misconduct" by Thiel, Portnoy and Wooway, which form the basis of Amisil's claims, lie beyond the purview of the indemnity provision. The Complaint alleges that Thiel, aided by Portnoy and Woolway, engaged in a fraudulent conspiracy designed to prevent Amisil from realizing the true value of its investment. Compl. ¶ 73. Thiel expressly led Amisil to believe that its interest in Clarium was nearly worthless. Compl. ¶ 14. He, through Clarium, fraudulently attempted to buy out Amisil's interest for $372, which he deceitfully represented was its fair market value, despite the fact that Clarium at the time owned a $4.9 million stake in PayPal. Compl. ¶¶ 14, 28-29. Four years later, Thiel made another offer to buy out Amisil's interest in an amount which he refused to substantiate with the company's books and records. Compl., ¶¶ 41-44. After submitting a written request to inspect Clarium's records, Amisil alleges that Portnoy and Woolway deceitfully led Amisil to believe that the documents would be forthcoming, when they were not, as part of a larger scheme carried on over the next several months to prevent Amisil from realizing the value of its interest in Clarium. Compl. ¶ 44, 45. Accordingly, the indemnity clause in the Operating Agreement does not demonstrate an intent to confer the benefit of arbitration upon

these non-signatory defendants.

Moreover, these non-signatory defendants have no right to compel arbitration of claims arising from their independent, non-contractual acts of fraud and *ultra vires* wrongful conduct. *See Britton v. Co-Op Banking Group*, 4 F.3d 742, 748 (9th Cir. 1993) (denying non-signatory's motion to compel arbitration where alleged acts were independent acts of fraud, unrelated to any provision of the contract); *see also McCarthy*, 22 F.3d at 359 (noting that in the corporate context "suits alleging that a person affiliated with a corporation created or manipulated it as part of a larger (fraudulent) scheme" are suits against the individual in his personal capacity). Thiel's attempts to buy out Amisil's interest in 2002 and May-June 2006 for a fraction of its true value constitute independent acts of fraud because the Operating Agreement neither obligates nor encourages the Managing Member, officer or majority shareholder to buy out minority interests. Indeed, the buy-out attempts were part of *Thiel's* larger scheme to channel all the profits of the company (of which he personally owns 98%) to himself. Moreover, in perpetrating the fraudulent and wrongful course of conduct against Amisil, Thiel, Portnoy and Woolway violated their respective duties not to injure Amisil, separate and apart from their concurrent duties as officers and managers of Clarium. *See McCarthy*, 22 F.3d at 359-361 (explaining that in actions involving *ultra vires* conduct, an agent for a disclosed principal is not permitted to enjoy the benefits of the principal's arbitral agreement while shouldering none of the corresponding burdens); *see also Britton*, 4 F.3d at 746 (noting the allegation that the non-signatory agent sought to profit personally from his fraudulent acts). Thus, the claims alleged against Thiel, Portnoy and Woolway are precisely the types of claims against non-signatories that courts have refused to refer to arbitration.

Because Thiel, Portnoy and Woolway have not met their burden of establishing that they have a legal basis on which to enforce the arbitration provisions of Clarium's agreement with Amisil, the Court should deny the motion to compel arbitration of Amisil's claims against these individual defendants.

///

///

///

### C. Amisil Should Not Be Compelled to Arbitrate Its Claims Against Clarium Because the Proposed Arbitration Rules Fail to Provide Amisil a Fair Opportunity to Prove Its Claims

Compulsory arbitration is proper only where the procedures available in the arbitral forum provide parties a "fair opportunity to present their claims." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991). While the rules of the American Arbitration Association provide ambiguously for the "production of documents and other information" at the *discretion* of the arbitrator and as is "consistent with the expedited nature of arbitration," Amisil will be substantially prejudiced in its efforts to determine the true value of its interest in Clarium without a thorough forensic examination of Clarium's books and records. *See* American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, R. 21(a), September 15, 2005. Furthermore, given defendants' intransigence in not producing these records upon Amisil's repeated written requests before they purported to expel Amisil as a member, Amisil is rightly concerned that defendants simply intend to exploit the arbitral forum and its "expedited" discovery measures to perpetuate the actionable stonewalling that precipitated this case. Therefore, under the unique circumstances pled in the Complaint, compelled arbitration with Clarium (a shell entity controlled entirely by Thiel) would substantially prejudice Amisil's due process right to ever prove its claims.

### IV. CONCLUSION

For the foregoing reasons, plaintiff Amisil respectfully requests that the Court deny defendants' Motion to Compel Arbitration and to Stay Litigation Pending Arbitration as to all defendants. The core allegations of this Complaint focus on the tortious behavior of three individuals with whom Amisil has no arbitration agreement, and who are not entitled to indemnification under contract or law.

DATED: October 3, 2006.

REED SMITH LLP

By /s/
Tita K. Bell

Attorneys for Plaintiff
Amisil Holdings Ltd.