Howard S. Caro (SBN 202082)
Cecilia Y. Chan (SBN 240971)
Nathaniel R. Spencer-Mork (SBN 226886)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA  94104-2878
Telephone: +1.415.772.6000
Facsimile: +1.415.772.6268
Howard.Caro@hellerehrman.com
Cecilia.Chan@hellerehrman.com
Nate.SpencerMork@hellerehrman.com

Robert B. Hawk (SBN 118054)
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, CA 94025-3506
Phone: +1.650.324.7000
Facsimile: +1.650.324.0638
Robert.Hawk@hellerehrman.com

Attorneys for Defendants
Clarium Capital Management, LLC, Peter Thiel, Jason Portnoy and Mark Woolway

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMISIL HOLDINGS LTD., a Cyprus Corporation,<br><br>         Plaintiff,<br><br> v.<br><br>CLARIUM CAPITAL MANAGEMENT, LLC, et al.,<br><br>         Defendants. | Case No.: C 06 5255 MJJ<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION PENDING ARBITRATION**<br><br>**9 U.S.C. §§ 3, 4**<br><br>Hearing Date: October 24, 2006<br>Time:     9:30 a.m.<br>Courtroom:  11<br><br>The Honorable Martin J. Jenkins |

Heller Ehrman LLP

## I. INTRODUCTION

Each of Amisil's claims concern its interest in Clarium and accordingly depend on the Clarium Operating Agreement at every turn. Amisil does not dispute this. Those claims therefore "arise out of and relate to" the Operating Agreement, and must be arbitrated under the mandatory arbitration provision of that agreement. In its Opposition, Amisil attempts an end run around the arbitration provision it agreed to, arguing that it should not be enforced because the limitations on discovery in arbitration render the arbitration clause "invalid." This proposition, if accepted, would allow any party to an arbitration agreement to avoid arbitration by asserting that it does not like the ground rules. The law does not abide such pickiness, especially in light of the strong bias in favor of arbitration, and the only case Amisil cites in support of this proposition squarely rejects Amisil's position.

Amisil also claims that the Individual Defendants lack standing to compel arbitration, arguing that the Operating Agreement does not protect them as agents of Clarium. This argument ignores the language of the Operating Agreement and the allegations of the Complaint, which make clear that the Individual Defendants are indeed agents, entitled under controlling law to invoke the arbitration provision. Amisil also ignores an independent reason why its claims against all defendants are subject to arbitration: It is equitably estopped from relying on the Agreement to advance its claims while avoiding the obligations the Agreement imposes. Accordingly, all claims in the Complaint are subject to arbitration.

## II. ARGUMENT

### A. Long Established Rules of Arbitration Procedure Do Not Render the Arbitration Clause Invalid.

Amisil does not dispute that it has agreed to arbitrate claims against Clarium. *See* 1996 Operating Agreement § 10.17(a) ("Any … controversy or claim … shall be resolved through arbitration conducted in accordance with the rules of the American Arbitration Association.") (Compl. Ex. B). Instead, it suggests that the arbitration agreement should not be enforced because, it assumes, it will not receive all of the discovery in such a proceeding

1 that it believes it needs to determine the value of its interest in Clarium.  Amisil gives no
2 reason to conclude that it will receive "inadequate" access to documents or data.  More
3 fundamentally, Amisil's counterintuitive and unsupported argument flies in the face of well-
4 established law of arbitrability, and the only case Amisil cites in support expressly rejects
5 its position.

6      Under the Federal Arbitration Act, courts have almost no discretion to refuse to order
7 arbitration if, as is the case here, the parties have agreed to arbitrate a dispute.  *Simula, Inc.*
8 *v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999).  An arbitration agreement can be held
9 invalid in the manner Amisil suggests only if it "favors [one party] at every turn."
10 *Ferguson v. Countrywide Credit Indus.*, 298 F.3d 778, 787 (9th Cir. 2002).  The arbitration
11 clause in the Clarium Operating Agreement is completely neutral, and favors neither party
12 on its face.  Moreover, challenges to the adequacy of arbitration procedures — like Amisil's
13 challenge to the adequacy of discovery — are especially suspect:  "Such … attacks on
14 arbitration rest on suspicion of arbitration as a method of weakening the protections
15 afforded in the substantive law to would-be complainants, and as such, they are *far out of*
16 *step* with our current strong endorsement of the federal statutes favoring this method of
17 resolving disputes."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991)
18 (emphasis added; quotations and alterations omitted).  Indeed, the Supreme Court in *Gilmer*
19 ***rejected*** precisely the argument Amisil makes here — that limited discovery rendered
20 arbitration invalid.  *Id*. at 31; *compare* Am. Arb. Ass'n Commercial Arb. R. 21; *see also*
21 *Miyasaki v. Real Mex Restaurants, Inc*., No. C 05-5331 VRW, 2006 WL 2385229, at *7
22 (N.D. Cal. Aug. 17, 2006).

23      Amisil attempts to justify its position by complaining that Clarium is likely to oppose
24 its efforts to obtain documents in arbitration.  Opp'n at 7.  But the arbitrator, not Clarium,
25 will decide what documents Amisil is entitled to.  Amisil's position implicitly questions the
26 competence and neutrality of the arbitrator, a form of speculation the Supreme Court does
27 not countenance.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614,
28 634 (1985) ("We decline to indulge the presumption that the parties and arbitral body

Heller
Ehrman LLP

2

DEFS' REPLY MEM. ISO MOTION TO COMPEL ARBITRATION, Case No. C 06-5255 MJJ

conducting a proceeding will be unable or unwilling to retain competent, conscientious, and impartial arbitrators."). Amisil makes no showing why the arbitrator will refuse its document requests, and it thus fails to make any showing that it will be prejudiced in arbitration. In short, arbitration "procedures might not be as extensive as in the federal courts, [but] by agreeing to arbitrate," Amisil — a sophisticated investor — has traded "the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer*, 500 U.S. at 31 (citation omitted). Amisil is asking this Court to rewrite one term of the contract it is otherwise seeking to enforce. The Federal Arbitration Act forbids this.

**B.     The Nonsignatories Are Entitled to Enforce the Agreement to Arbitrate.**

Amisil contends that the Individual Defendants cannot compel arbitration against it and claims that the Individual Defendants seek to compel arbitration "based simply on a broad federal policy favoring arbitration." Opp'n at 3. Again, Amisil is wrong. The Individual Defendants assert two separate and independent bases on which they can compel arbitration: equitable estoppel and agency.[1] Amisil does not even attempt to address equitable estoppel as a basis for a finding that the claims against the individuals are arbitrable, and its arguments the Individual Defendants lack standing as agents are without merit. Accordingly, the claims against the Individual Defendants, like the claims against Clarium, should be arbitrated.

**1.     Amisil Is Equitably Estopped From Declining Arbitration with the Individual Defendants.**

The doctrine of equitable estoppel allows nonsignatories to enforce arbitration agreements against signatories when

> the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. *When each of a signatory's claims against a nonsignatory*

---

[1] Amisil also attempts to cast the nonsignatories' efforts at compelling arbitration as being based on a third party beneficiary argument. Opp'n at 4. The Individual Defendants' position does not depend on a finding that they are third party beneficiaries, and any argument by Amisil on this point is misplaced.

Heller
Ehrman LLP

3

DEFS' REPLY MEM. ISO MOTION TO COMPEL ARBITRATION, Case No. C 06-5255 MJJ

*makes reference to or presumes the existence of the written agreement,* the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.

*Fujian Pacific Elec. Co. Ltd. v. Bechtel Power Corp.*, No. C 04-3126 MHP, 2004 WL 2645974, at *5 (N.D. Cal Nov. 19, 2004) (emphasis added), *quoting MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999); *see also Larson v. Speetjens*, No. C 05-3176 SBA, 2006 WL 2567873, at *4-7 (N.D. Cal. Sept. 5, 2006), *citing Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417-18 (4th Cir. 2000); *Oceantrade S.A. v. Nuttery Farms, Inc.*, No. C 05-02589 WHA, 2005 WL 3299716, at *2 (N.D. Cal. Dec. 6, 2005). Amisil's claims against the Individual Defendants all "make reference to or presume the existence of" the Operating Agreement. The Operating Agreement is central to Amisil's Claims generally (*see, e.g.,* Compl. ¶¶ 2, 14, 46-49, 92-96), and is attached to and incorporated by reference into the Complaint. Compl. Ex. B. Moreover, Amisil seeks a judicial declaration that the Operating Agreement is binding on both it and Clarium, and seeks specific performance of the duties of all defendants under the Operating Agreement. Prayer ¶¶ 3, 5. Even its fraud claims are premised on supposed actions by the Individual Defendants that violated purported duties under the Operating Agreement. Compl. ¶¶ 55(b), 69(a) (allegedly fraudulent failure to furnish financial statements supposedly required under Operating Agreement). In its Opposition, Amisil does not contend otherwise. Amisil cannot now "have it both ways" by attempting to enforce the provisions of the Operating Agreement that benefit it, while avoiding those like the arbitration provision it doesn't like. *Fujian*, 2004 WL 2645974, at *5; *see also Oceantrade*, 2005 WL 3299716, at *2 ("Plaintiff cannot wish away the provisions it dislikes from the very contracts it seeks to enforce"). Accordingly, Amisil should be equitably estopped from denying the Individual Defendants the right to arbitrate against it. This alone compels the conclusion that these claims should be arbitrated.

    **2.    The Individual Defendants, As Agents of Clarium, Have Standing to Enforce the Arbitration Clause.**

The Individual Defendants also have standing to compel arbitration as agents of

Clarium. The Complaint specifically alleges that that the Individual Defendants are agents of Clarium, (Compl. ¶¶ 2, 9-11), and the Court should reject Amisil's attempt to disown these unambiguous allegations. The Ninth Circuit's decision in *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185 (9th Cir. 1986) is directly on point: Nonsignatory agents of a party to an arbitration agreement can compel arbitration against *signatory* claimants, who previously agreed to arbitrate but decided to sue instead. *See* Opening Br. at 5-6. Yet Amisil suggests that this Court ignore controlling authority, and instead follow an out-of-circuit district court opinion that does not even support its argument. Opp'n at 4, *citing CBS, Inc. v. Snyder*, 798 F. Supp. 1019, 1027 (S.D.N.Y. 1992). The *Snyder* court *did not* refuse to force a signatory to an arbitration agreement to abide by its terms. *Id*. Rather, the situation was the opposite of the case here: The *Snyder* court refused to compel *nonsignatory* agents — parties who never agreed to arbitrate anything — to arbitrate, and differentiated *Letizia* on precisely this ground. *Id*. In Amisil's world, this "is a distinction without difference." Opp'n at 4 n.2. But, as the *Snyder* court explained, and as a matter of common sense, it is one thing for a nonsignatory to compel a signatory to arbitrate, when that signatory attempts, like Amisil, to ignore an agreement to arbitrate all claims. 798 F. Supp at 1026-27. It is quite another thing to force arbitration against a nonsignatory who has never agreed to arbitrate anything with anybody. *Id*. at 1025, 1027.

Amisil's next argument is that the Individual Defendants cannot compel arbitration of claims arising from noncontractual fraud. Opp'n at 6, *citing Britton v. Co-op Banking Group*, 4 F.3d 742, 748 (9th Cir. 1993). Under *Britton*, however, the test of whether a nonsignatory agent can compel arbitration is whether "*any* of [the agent's] alleged wrongdoing as agent, officer or employee … relate[d] to or [arose] out of the contract containing the arbitration clause." *Id*. at 747. If any of the conduct is related, then the agent can compel arbitration. *Id*. In *Britton*, the agent had allegedly tried to fraudulently induce plaintiffs not to pursue claims against the principal. *Id*. at 748. These acts were "subsequent, independent acts of fraud, unrelated to any provision or interpretation of the contract," and none of the conduct "arose out of or related to" the contract. *Id*.

Heller Ehrman LLP

5

DEFS' REPLY MEM. ISO MOTION TO COMPEL ARBITRATION, Case No. C 06-5255 MJJ

Amisil, by contrast, alleges no "independent acts of fraud" unrelated to the Operating Agreement. Amisil contends that the attempts to buy it out are "independent acts of fraud because the Operating Agreement neither obligates nor encourages the" buy out. Opp'n at 6. But as the exhibits attached to and incorporated by reference into the Complaint show, the buy out was effected pursuant to the terms of the Operating Agreement. *See* Letter from Bruce Gibney to Daniel Formeller dated July 20, 2006 (Compl. Ex. E) (invoking Section 7.3 of the Operating Agreement to mandatorily retire Amisil); *see also* 2003 Operating Agreement § 7.3 (RJN re Clarium Motion to Dismiss Ex. A) [Docket # 22]. Accordingly, the Operating Agreement must be interpreted to evaluate the buy out. Amisil also claims that Defendants improperly withheld information from it and refused to pay distributions to it. Each aspect of the Individual Defendants' allegedly wrongful conduct is addressed by the Operating Agreement. *See* Compl. ¶¶ 46, 47, 49 (quoting 1996 Operating Agreement provisions regarding Allocation of Profits and Losses (§ 4.1); Discretionary Distributions (§ 5.1) and Records and Financial Statements (§ 6.9)). Any evaluation of Amisil's claims that the Individual Defendants breached duties they owed to Amisil therefore turns on the Operating Agreement, *Douzinas v. Am. Bureau of Shipping, Inc.*, 888 A.2d 1146, 1149-1150 (Del. Ch. 2006) (claims for breaches of duties in LLC context requires evaluation of LLC Agreement); *Sonet v. Timber Co., L.P.*, 722 A.2d 319, 324 (Del. Ch. 1998) (same), and there are no "subsequent, independent acts of fraud."

Finally, Amisil argues that, because it has alleged that the Individual Defendants engaged in Material Misconduct within the meaning of the Operating Agreement, they should not be entitled to enforce the arbitration provision. This argument too should be rejected. The question of arbitrability hinges on the factual basis of the dispute and whether it is encompassed by the terms of the agreement, and not on the legal theories the plaintiff advances. *Simula,* 175 F.3d at 721-25. The mere assertion of causes of action for fraud and breach of fiduciary duty does not establish, for purposes of this motion, that the Individual Defendants in fact committed such actions. Were the law otherwise, a plaintiff could avoid application of an arbitration clause by artful pleading, a result in direct conflict with the

Heller Ehrman LLP

6
DEFS' REPLY MEM. ISO MOTION TO COMPEL ARBITRATION, Case No. C 06-5255 MJJ

FAA's liberal pro-arbitration policy. *Id.* at 721 ("[F]actual allegations need only touch matters covered by the contract containing the arbitration clause"); *see also Kroll v. Doctors' Assocs., Inc.*, 3 F.3d 1167, 1170 (7th Cir. 1993) ("[A] plaintiff may not avoid an otherwise valid arbitration provision merely by casting its complaint in tort") (internal quotations and citations omitted). Accordingly all claims against the Individual Defendants should be arbitrated.[2]

### C. This Action Should be Stayed Pending Arbitration.

As set forth above, all Amisil's claims in this action are subject to arbitration. Pursuant to 9 U.S.C Section 3, the Clarium Defendants request that this action be stayed in its entirety until any such arbitration is completed.

## III. CONCLUSION

For the reasons stated above, the Clarium Defendants respectfully request that the Court compel Amisil to arbitrate the instant dispute and that the instant case be stayed pending that arbitration.

October 10, 2006                    Respectfully submitted,

                                    HELLER EHRMAN LLP


                                    By _____/s/ Howard S. Caro_____
                                         HOWARD S. CARO

                                    Attorneys for Defendants
                                    CLARIUM CAPITAL MANAGEMENT, PETER
                                    THIEL, JASON PORTNOY and MARK
                                    WOOLWAY

---

[2] Given the lack of support for Amisil's argument that Clarium should not be allowed to compel arbitration, it is striking that Amisil fails to acknowledge that even if only the claims against Clarium are arbitrable, this Court should stay this case as against the Individual Defendants pending completion of an Amisil-Clarium arbitration. *See, e.g., Moses H. Cone Hosp. v. Mercury Contr. Corp.*, 460 U.S. 1, 20 n.23 (1983); *Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985).