Harvey L. Leiderman (SBN 55838)
Email:  hleiderman@reedsmith.com
Tita K. Bell (SBN 206735)
Email:  tkbell@reedsmith.com
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA  94111-3922
Mailing Address:
P.O. Box 7936
San Francisco, CA  94120-7936
Telephone:     415.543.8700
Facsimile:     415.391.8269

Daniel R. Formeller (admitted *pro hac vice*)
Email:  dformeller@tsmp.com
Basileios Katris (admitted *pro hac vice*)
Email:  bkatris@tsmp.com
Tressler, Soderstrom, Maloney & Priess
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois  60606-6308
Telephone:     312.627.4000
Facsimile:     312.627.1717

Attorneys for Plaintiff Amisil Holdings Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMISIL HOLDINGS LTD., a Cyprus Corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>CLARIUM CAPITAL MANAGEMENT, LLC f/k/a/ THIEL CAPITAL MANAGEMENT, LLC, a Delaware Limited Liability Company, PETER ANDREAS THIEL, a California resident, JASON PORTNOY, a California resident, MARK WOOLWAY, a California resident,<br><br>    Defendants. | Case No. C 06 5255 MJJ<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT CLARIUM CAPITAL MANAGEMENT, LLC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>Hearing Date:     November 7, 2006<br>Time:                   9:30 a.m.<br>Courtroom:          11<br><br>Honorable Martin J. Jenkins |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF CONTENTS

**Page**

I .  INTRODUCTION ................................................................................1

II .  FACTS RELEVANT TO THE MOTION ..............................................1

    A.   The Parties' Agreements ................................................2

    B.   Amisil's Redemption of Funds from the Fund ..............2

    C.   The Vesting Provisions of the Operating Agreement ........2

    D.   The Invalidity of Clarium's Second Amended Operating Agreement ..........................................................3

    E.   A Withdrawal from the Fund Does Not Equate to a Withdrawal from the Company ...............................4

    F.   Profits and Losses Due Amisil on a Quarterly Basis ........4

    G.   Documents Due Amisil on a Periodic Basis ...............5

    H.   Documents Due to Amisil upon Request ...................5

    I.   Defendants' March 2006 Meeting with Amisil ............5

    J.   Amisil's First Request for Books and Records and Defendants' Response:  Stall Production ..................5

    K.   Thiel's Offer to Purchase Amisil's Membership Interest ................................................6

    L.   Amisil's Second Request for Books and Records and Defendants' Response Thereto:  The Expulsion of Amisil ................6

    M.   The Impact of Clarium's Purported Expulsion of Amisil ........6

    N.   Unknown Considerations ..........................................6

III .  ARGUMENT ...................................................................................6

    A.   Legal Standard on a Motion to Dismiss ......................6

    B.   Amisil Has Properly Stated a Claim for Securities Fraud because Amisil's Complaint Has Satisfied the Heightened Pleading Requirements of Rule 9(b) and the PSLRA ....................7

        1.   Amisil Has Satisfied the Pleading Requirements of Rule 9(b) and the PSLRA ..............................7

        2.   Amisil Has Pled Each Element of a Securities Fraud Claim ..............................................8

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

# TABLE OF CONTENTS
## (CONTINUED)

**Page**

C.    Amisil Has Pled Common Law Fraud with Particularity as Required by Rule 9(b)......................................................................12

     1.    Amisil Has Satisfied the Pleading Requirements of Rule 9(b)......................................................................................12

     2.    Amisil Has Specifically Alleged Facts to Support Each Element of its Claim of Fraud......................................................13

D.    Amisil Has Alleged that Clarium Breached the Operating Agreement by Denying Amisil Access to Information, Withholding Like-Kind Distributions and Unilaterally Attempting to Expel Amisil as a Member of the LLC.......................................15

     1.    Amisil Did Not Withdraw as a Member of Clarium............................16

     2.    Clarium Was Bound to Provide Amisil with Like Kind Distributions, Information and Access to Books and Records. ......................................................................................17

         (a)    Clarium's Failure to Provide Financial Statements, Reports and Related Information Violated the Parties' Operating Agreement......................................18

         (b)    Clarium's Purported Removal of Amisil as a Member of the LLC Violated the Parties' Operating Agreement and Is Not Permitted Under Delaware Law. ....................................................18

         (c)    Clarium Breached the Parties' Operating Agreement by Not Providing All of Its Members with Like Kind Distributions. ....................................19

         (d)    Clarium's Refusal to Acknowledge Amisil's Right to Inspect the Company's Books and Records Constitutes a Breach of Contract. ............................19

E.    Amisil's Complaint Properly Stated a Claim for Conversion Because California Law Recognizes the Claim for Conversion of Securities......................................................................................20

F.    Amisil's Combined Claim for an Accounting and Constructive Trust is Entirely Proper Under Delaware Law ................................21

G.    The Complaint Stated a Claim for Violation of the Investment Advisers Act......................................................................................22

H.    Amisil Has Properly Alleged a Claim for Unfair Business Practices under California Law........................................................23

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

PLAINTIFF'S OPPOSITION TO DEFENDANT CLARIUM CAPITAL MANAGEMENT, LLC'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

## <u>TABLE OF CONTENTS</u>
### <u>(CONTINUED)</u>

<u>**Page**</u>

I.     Amisil Has Alleged a Claim for Breach of Implied Covenants of Good Faith and Fair Dealing under Delaware Law ..........................................24

J.     Amisil May Allege a Claim for Preliminary and Permanent Injunction. ............................................................................................................25

IV . CONCLUSION..............................................................................................................25

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

PLAINTIFF'S OPPOSITION TO DEFENDANT CLARIUM CAPITAL MANAGEMENT, LLC'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allen v. Beverly Hills*,
   911 F.2d 367 (9th Cir. 1990) ...................................................................................25

*Ambassador Hotel  Co. v. Wei-Chuan Inv.*,
   189 F.3d 1017 (9th Cir. 1999) .................................................................................10

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)...................................................................................................11

*Bosse v. Crowell Collier & MacMillan*,
   565 F.2d 602 (9th Cir. 1977) ....................................................................................12

*Conley v. Gibson*,
   355 U.S. 41 (1957)......................................................................................................6

*Empress LLC v. City and County of San Francisco*,
   419 F.3d 1052 (9th Cir. 2005) ..................................................................................24

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976).....................................................................................................9

*Falkowski v. Imation Corp.*,
   309 F.3d 1123 (9th Cir. 2002) ..................................................................................11

*In re Cylink Sec. Litig.*,
   178 F. Supp. 2d 1077 (N.D. Cal. 2001) .....................................................................7

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ......................................................................................9

*In re Syncor Int'l Corp. Secs. Litig.*,
   327 F. Supp. 2d 1149 (N.D. Cal. 2004) ......................................................................9

*In re U.S. Grant Hotel Assoc. Ltd. Sec. Litig.*,
   740 F. Supp. 1460 (S.D. Cal. 1990)...........................................................................13

*Kremen v. Cohen*,
   325 F.3d 1035 (9th Cir. 2003) ...................................................................................21

*Levine v. Diamanthuset, Inc.*,
   950 F.2d 1478 (9th Cir. 1991) ...................................................................................10

*Medical Instrument Dev. Labs. v. Alcon Labs.*,
   2005 U.S. Dist. LEXIS 41411 (N.D. Cal. August 10, 2005)...........................20, 23

*Mosher v. Kane*,
   784 F.2d 1385 (9th Cir. 1986) ...................................................................................11

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) ......................................................................................7, 12

PLAINTIFF'S OPPOSITION TO DEFENDANT CLARIUM CAPITAL MANAGEMENT, LLC'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
   380 F.3d 1226 (9th Cir. 2004) .................................................................................7, 8, 10

*Paul Revere Life Ins. Co. v. Bass*,
   523 F. Supp. 134 (N.D. Cal. 1981) ..........................................................................14

*Sparling v. Daou (In re Daou Sys., Inc. Sec. Litig.)*,
   397 F.3d 704 (9th Cir. 2005) .................................................................................7, 8, 11

*Standard Chlorine of Delaware, Inc., v. Sinbaldi*,
   821 F. Supp. 232 (D. Del. 1992)..............................................................................22

*State of Cal. ex rel. Mueller v. Walgreen Corp.*,
   175 F.R.D. 638 (N.D. Cal. 1997)..............................................................................13

*Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*,
   971 F.2d 401 (9th Cir. 1992) ...................................................................................20

*Swierkiewicz v. Sorema, N.A.*,
   534 U.S. 506 (2002)..................................................................................................24

*United Roasters, Inc. v. Colgate-Palmolive Co.*,
   649 F.2d 985 (4th Cir. 1981) ...................................................................................23

*Williamson v. Gen. Dynamics Corp.*,
   208 F.3d 1144 (9th Cir. 2000) ..................................................................................6

*Zelman v. JDS Uniphase Corp.*,
   376 F. Supp. 2d 956 (N.D. Cal. 2005) .....................................................................11

**STATE CASES**

*Albert v. Alex. Brown Mgmt Services, Inc.*,
   2005 WL. 2130607 (Del. Ch. August 26, 2005) ....................................................15, 18

*Cheese Shop International, Inc. v. Steele*,
   311 A.2d 870 (Del. 1973)..........................................................................................21

*Dodge v. Wilmington Trust Co.*,
   1995 WL. 106380 (Del. Ch. Feb. 3, 1995) ............................................................21, 22

*Elf Atochem North America, Inc. v. Jaffari*,
   727 A.2d 286 (Del. 1999)..........................................................................................19

*Gilbert v. El Paso Co.*,
   490 A.2d 1050 (Del. Ch. 1984), aff'd, 575 A.2d 1131 (Del. 1990)........................25

*Haigler v. Donnelly*,
   18 Cal. 2d 674 (1941) ...............................................................................................21

*Hartford Financial Corporation v. Burns*,
   96 Cal. App. 3d 591 (1979) ......................................................................................20

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Kaiser Aluminum Corp. v. Matheson*,
  681 A.2d 392 (Del. 1996) ...................................................................................12

*Nedlloyd Lines B.V. v. Superior Court*,
  3 Cal. 4th 459 (1992) ........................................................................................23

*Podolsky v. First Healthcare Corp.*,
  50 Cal. App. 4th 632 (1996) .............................................................................24

*Susumu Igauye v. Howard*,
  114 Cal. App. 2d 122 (1952) ............................................................................20

*VGS, Inc. v. Castiel*,
  2000 WL. 1277372 (Del. Ch. Aug. 31, 2000), aff'd , 781 A.2d 696 (Del. 2001)...................22

*VLIW Technology, LLC v. Hewlett-Packard Co.*,
  840 A.2d 606 (Del. 2003) ............................................................................15, 17

*Vanderbilt Income and Growth Assocs, LLC v. Arvida/JMB Managers, Inc.*,
  691 A.2d 609 (Del. 1996) .................................................................................17

*Walker v. Resource Development Co. Ltd.*,
  791 A.2d 799 (Del. Ch. 2000) ..........................................................................19

*Wilgus v. Salt Pond Inv. Co.*,
  498 A.2d 151 (Del. Ch. 1985) ..........................................................................24

*Wilmington Leasing, Inc., et al. v. Parrish Leasing Company, L.P.*,
  1996 Del. Ch. LEXIS 123 (Del. Ch. Sept. 15, 1996) ......................................25

*Wilner v. Sunset Life Ins. Co.*,
  78 Cal. App. 4th 952 (2000) .............................................................................24

## FEDERAL STATUTES

15 U.S.C. § 80b-9 ..................................................................................................22

## FEDERAL RULES

Federal Rule of Civil Procedure 8(a).............................................................23, 25

Federal Rule of Civil Procedure 9(b)..............................................................7, 13

## STATE STATUTES

Calif. Business & Professions Code Section 17200 .......................................23, 24

PLAINTIFF'S OPPOSITION TO DEFENDANT CLARIUM CAPITAL MANAGEMENT, LLC'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    Plaintiff Amisil Holdings Ltd. ("Amisil") hereby submits its Opposition to Defendant

2    Clarium Capital Management, LLC's Motion to Dismiss Plaintiff's Complaint for Failure to State a

3    Claim ("Motion") as follows:

4    **I.    INTRODUCTION**

5    By filing its Motion, defendant Clarium Capital Management, LLC ("Clarium" or the

6    "Company") continues in its purposeful conduct in attempting to conceal its true financial condition

7    and the monies owed to Amisil. Amisil was solicited to invest in the Company at its very inception,

8    which grew from a fledgling investment to a multi-billion dollar hedge fund. Despite the geometric

9    growth in the fund's assets and very large distributions to the fund's founders, Amisil has not

10   received a single cent. Repeated attempts to gain an explanation for this apparent disparate treatment

11   of investors have been rebuffed and inquiries seeking a review of the defendants' books and records

12   have been treated with equal disdain.

13   Under the explicit terms of the Agreements between the parties, Amisil to this day maintains

14   a valuable share and stake in the Company and Clarium is obligated to provide Amisil with access to

15   its books and records and other financial information. Clarium has completely disregarded this

16   obligation. Clarium's avoidance of this obligation in spite of repeated written requests and, now this

17   litigation has served just one purpose – to prevent the plaintiff from determining what it is owed.

18   Clarium's shotgun Motion is just the latest in a series of acts of avoidance and disregard of

19   its obligations. The simple facts are these: Amisil purchased an equity interest in Clarium, obtaining

20   a share in the Company. In return, Clarium became obligated to provide Amisil, and all other

21   members who purchased an equity interest, complete access to its books and records include regular

22   financial statements, and to pay them pro-rata distributions. Amisil met its obligation. Clarium has

23   not. Instead, Clarium has not paid any pro-rata distributions, has denied Amisil access to its books

24   and records, and will apparently resort to any measure to avoid its obligations including the

25   unilateral ouster of Amisil and filing this Motion.

26   **II.    FACTS RELEVANT TO THE MOTION**

27   Clarium's recitation of the facts is intentionally incomplete and therefore thoroughly one-

28   sided. A simple summary of the complete timeline of relevant events, documents and facts follows.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**A.    The Parties' Agreements**

On February 27, 1998, Amisil entered into a subscription agreement with Clarium that provided for Amisil to invest $300,000 collectively in the Investment Fund (the "Fund") and the Company. Compl. ¶¶ 18, 19. In return for Amisil's investment, Amisil received a 1% stake in Clarium. *Id.* According to the subscription agreement signed by both parties, an operating agreement dated September 9, 1996 (the "Operating Agreement") governed Clarium. *Id.*

**B.    Amisil's Redemption of Funds from the Fund**

On or about March 31, 1999, due to poor performance of the Fund, Amisil withdrew what was purported to be the balance of its investment in just the Fund. Compl. ¶ 22. The amount withdrawn was less than Amisil's initial capital contribution. *Id.*

**C.    The Vesting Provisions of the Operating Agreement**

The Operating Agreement contains three provisions that relate to and/or impact the vesting of a current member's interest in Clarium. Operating Agreement § 7.2 (c), § 7.5 (b) and § 7.5 (c).

The first is § 7.2 (c), which states:

> If a Member effects a withdrawal from the Fund which reduces such Member's capital account in the Fund to a level which does not exceed such Member's initial capital contribution to the Fund (such shortfall shall be deemed as the "Capital Reduction"), then such Member's unvested interest in the Company shall be reduced by a share equal to the product of the unvested interest and a fraction, the numerator of which is the Capital Reduction and the denominator of which is such Member's initial capital contribution to the Fund. [*Id.* § 7.2 (c).]

The second provision is § 7.5 (b), which pertains to vesting of a current member's interest:

> (b) Each Member's Vesting Interest shall vest as follows:
>
> (i) In the case of a Member admitted to the Company on or before the date of the Fund's initial closing, the following vesting schedule shall apply (with all dates determined in respect of the Fund's initial closing date).

| Vesting Reference Date | Vested Percentage |
| --- | --- |
| Prior to first anniversary | 10 percent |
| First anniversary | 30 percent |
| Second anniversary | 50 percent |
| Third anniversary | 70 percent |
| Fourth anniversary | 100 percent |

> (ii) In the case of a Member admitted to the Company after the Fund's initial closing date, the vesting schedule set forth in Section 7.5(b)(i) shall apply; provided, however, that the vesting reference date for such Member shall be determined with

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

2

respect to the date of such Member's admission to the Company rather than the initial closing date of the Fund.  [*Id.* § 7.5(b).]

3

4

5

Finally, the last provision that impacts both prior provisions is § 7.5 (c), which provides that "[a]ny portion of a Member's Vesting Interest that has not fully vested by the time of the Company's dissolution and liquidation shall vest at such time."

6

7

8

9

Pursuant to § 7.5(b)(i), therefore, Amisil's redemption of its investment in the Fund established a minimum ownership in the Company of 0.3%.  However, because the amount redeemed from the Fund was less than the initial contribution, § 7.2 (c) immediately increased Amisil's minimum ownership in the Company to 0.4%.

10

**D.    The Invalidity of Clarium's Second Amended Operating Agreement**

11

12

13

14

On February 19, 2003, Clarium attempted to amend the Company's Operating Agreement in order to forego the consent requirement for the removal of a member.  Compl. ¶ 34.  The Operating Agreement dated September 9, 1996 contains the following relevant provisions with regard to Amendments:

15

16

(a)    Except as otherwise provided in this Section 10.4, this Agreement may be amended, in whole or in part, only through a written amendment executed by a Two-Thirds-Interest of the Members

17

\*   \*   \*

18

19

20

21

22

23

(d)    Notwithstanding the foregoing provisions of this Section 10.4, the Managing Member may, without the consent of the other Members, amend this Agreement in any manner determined by the Managing Member to be necessary or desirable to comply with applicable law or to resolve an ambiguity in the terms and provisions of this Agreement. The Managing Member shall not have the authority under this Section 10.4(d) to amend this Agreement in a manner that is materially adverse to any other Member; provided, however, that a Member's right to object to an amendment pursuant to this Section 10.4(d) on the grounds that such amendment is materially adverse to such Member shall expire at the Close of Business on the 30th day following notice to such Member of such amendment unless such Member has provided written notice of such objection prior to such date. [*Id.*, § 10.4.]

24

25

26

On March 11, 2003, pursuant to the objection mechanism set forth in § 10.4, Amisil timely objected to such an amendment.  Compl. ¶ 34.  Thus, the only valid and effective operating agreement here is the version dated September 9, 1996.[1]

27

28

---

1  Clarium requested that this Court take judicial notice of Clarium's Second Amended Operating Agreement dated March 2003.  Contemporaneously with the filing of this Opposition Brief, Amisil

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

### E.    A Withdrawal from the Fund Does Not Equate to a Withdrawal from the Company

The Operating Agreement provides that a member cannot be required to withdraw without its consent unless it is deemed to have withdrawn by virtue of "such Member's death, Bankruptcy, Dissolution, termination or permanent incapacity, or upon the occurrence of any other event that mandates termination of such Member's status as a Member under the Act."  Operating Agreement § 7.2.  Moreover, "removal" of a member cannot occur without the member's consent.  *Id.* § 7.3.  None of these reasons for removal are at play in this case.

### F.    Profits and Losses Due Amisil on a Quarterly Basis

Amisil, as a member of Clarium, was entitled to its membership percentage of profits or losses on at least a quarterly basis.  As stated in § 4.1 of the Operating Agreement,

… items of Profit and Loss of the Company for each fiscal quarter (or shorter period selected by the Managing Member) shall be allocated as follows:

(i)  Items of Profit and Loss attributable to Incentive Fees and to Management Fees shall be allocated among the Members in proportion to their respective Membership Interests.

(ii)  All other items of Profit and Loss shall be allocated among the Members in proportion to their respective Capital Contributions.

(iii)  Items of loss, expense or deduction attributable to the Company's indemnification obligation under Section 9.2 shall be allocated among the Members in proportion to their respective Membership Interests. [*Id.* § 4.1.]

Since at least 2002, Clarium has not provided Amisil with any "profit and loss" allocations or distributions.  Compl. ¶ 35.  Clarium concedes this in its Motion (Motion at 32-33).

---

has filed an Objection to Clarium's Request for Judicial Notice since Amisil disputes the validity of the Second Amended Operating Agreement based upon the objection stated herein.  Amisil further objects to the Second Amended Operating Agreement for another reason: the amendment was not "necessary or desirable to comply with applicable law or to resolve an ambiguity in the terms and provisions of this Agreement." *See* Operating Agreement § 10.4 (d).  Therefore, Clarium has yet again breached the terms of the Agreement.

PLAINTIFF'S OPPOSITION TO DEFENDANT CLARIUM CAPITAL MANAGEMENT, LLC'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### G.    Documents Due Amisil on a Periodic Basis

All members of Clarium, including Amisil, were owed certain financial and reporting documents on a yearly basis.  Pursuant to the "Records and Financial Statements" provision in the Operating Agreement:

> Within 90 days after the end of each Fiscal Year, the Company shall furnish to each Member a statement of (i) the assets and liabilities of the Company, (ii) the net Profit or Loss of the Company, and (iii) the Capital Account balance of such Member. In addition, within 90 days after the end of each Fiscal Year, the company shall supply all information reasonably necessary to enable the Members to prepare their Federal income tax returns and (upon request therefor) to comply with other reporting requirements imposed by law.  [*Id.*, § 6.9 (c).]

Since at least 2002, Clarium has not provided Amisil with any financial statements or any other written information about its financial status for that matter.  Compl. ¶ 35.

### H.    Documents Due to Amisil upon Request

The Operating Agreement also provides that "[t]he Company shall maintain true and proper books, records, reports and accounts in which shall be entered all transactions of the Company. Such books, records, reports and accounts shall be located at the Principal Office and shall be available to any Member for inspection and copying during reasonable business hours."  Operating Agreement § 6.9 (a).

### I.    Defendants' March 2006 Meeting with Amisil

On March 14, 2006, defendants Portnoy and Woolway, officers of Clarium, met with a representative of Amisil in order to discuss its membership interest in Clarium.  Compl. ¶ 38.  In that meeting, Amisil's representative was informed that (1) only Amisil and Thiel were members of Clarium, (2) all other members were bought out in 2002, and (3) as a result of fee based revenues of $72 million for its performance in the calendar year 2005, more than $61 million was paid out by Clarium.  *Id.* ¶ 38.  Amisil was also informed that at least $31 million of this amount was in the form of a distribution to Peter Thiel.

### J.    Amisil's First Request for Books and Records and Defendants' Response: Stall Production

Up until the meeting of March 14, 2006 meeting, it had not been provided with any financial information related to the Company since prior to 2002.  Consequently, having obtained limited

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  financial information from that meeting and been informed that distributions were made to the only

2  other member of the Company, on March 20, 2006, Amisil made a request for access to the

3  Company's books and records.  Compl. ¶ 39.  On March 21, 2006, defendant Portnoy responded to

4  Amisil that the documents would be forthcoming; however they were never produced. *Id.* ¶ 40.

5  **K.     Thiel's Offer to Purchase Amisil's Membership Interest**

6      On June 14, 2006, Thiel made a verbal offer of $300,000 to purchase Amisil's membership

7  interest in Clarium. Compl. ¶ 42.  In response, Amisil informed Thiel that Amisil required access to

8  the books and records to properly evaluate its membership interest.  *Id.*

9  **L.     Amisil's Second Request for Books and Records and Defendants' Response**
       **Thereto:  The Expulsion of Amisil**

10

11      On July 17, 2006, through its counsel, Amisil sent a formal request for inspection of books

12  and records.  *Id.* ¶ 44.  Three days later, on July 20, 2006, Thiel, in his capacity as Managing

13  Member, attempted to expel Amisil as a member of Clarium. *Id.* ¶ 44.

14  **M.     The Impact of Clarium's Purported Expulsion of Amisil**

15      Clarium's expulsion of Amisil, if taken as a valid action, means that Thiel has in fact caused

16  the dissolution of the Company since Thiel and Amisil were its only members. See Compl. ¶ 38;

17  Operating Agreement § 8.1 § 8.2.  Upon dissolution, Amisil's membership interest fully vests.

18  Operating Agreement § 7.5 (c).

19  **N.     Unknown Considerations**

20      The Defendants have represented that Thiel and Amisil are the only members that remain in

21  Clarium and that all other members were bought out in 2002.  Compl. ¶ 38.  According to defendants

22  Portnoy and Woolway, Thiel has a 98.66% stake in Clarium. *Id.*  As such, by simple subtraction, if

23  Amisil is the only other member in Clarium, its interest could be as high as 1.34%, if not more.

24  **III.  ARGUMENT**

25  **A.     Legal Standard on a Motion to Dismiss**

26          As a general rule, a motion to dismiss for failure to state a claim should be denied

27  unless it is clear that plaintiff cannot prove any set of facts that would entitle it to relief.  *Conley v.*

28  *Gibson*, 355 U.S. 41, 45-46 (1957); *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th

1    Cir. 2000).  When ruling on a motion to dismiss, a court must consider as true, in the light most

2    favorable to the plaintiff, all of the material allegations in the Complaint.  *Sparling v. Daou (In re*

3    *Daou Sys., Inc. Sec. Litig.)*, 397 F.3d 704, 709-10 (9th Cir. 2005).  Still, conclusory allegations,

4    without more, will not defeat a motion to dismiss.  *Id.* at 710.  Finally, "[d]ismissal without leave to

5    amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by

6    any amendment." *Id.* (internal quotations omitted).

7    **B.    Amisil Has Properly Stated a Claim for Securities Fraud because Amisil's**
       **Complaint Has Satisfied the Heightened Pleading Requirements of Rule 9(b)**
8    **and the PSLRA**

9    Clarium's challenge to Amisil's claim for securities fraud fails because Amisil has met the

10   elevated pleading standards of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") and the Private

11   Securities Litigation Reform Act ("PSLRA") and because Amisil has pled the prima facie elements

12   of a 10(b) claim.  Amisil has alleged each of the six elements of a securities fraud claim and has pled

13   fraudulent conduct and scienter with particularity.  As such, Clarium's Motion to Dismiss Count I

14   should be denied.

15   **1.    Amisil Has Satisfied the Pleading Requirements of Rule 9(b)**
       **and the PSLRA.**
16

17   Contrary to Clarium's contention, Amisil's Complaint has satisfied the elevated pleading

18   requirements of both Rule 9(b) and the PSLRA, because Amisil has pled facts demonstrating fraud

19   and scienter with particularity.

20   While a plaintiff must plead fraud and scienter with particularity, this court has held that just

21   one fact properly pled can be "a sufficient basis upon which to form" the belief that a false statement

22   was made with the proper state of mind.  *In re Cylink Sec. Litig.*, 178 F.Supp.2d 1077, 1084 (N.D.

23   Cal. 2001).  Moreover, when determining whether a pleading satisfies the elevated standards of Rule

24   9(b) and the PSLRA, courts consider the totality of the allegations.  *Nursing Home Pension Fund,*

25   *Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004).  Taken as a whole, Amisil's

26   allegations regarding fraud and scienter have been pled with sufficient particularity to inform

27   Clarium of its fraudulent conduct so that it may answer the charges against it.  *See Neubronner v.*

28   *Milken*, 6 F.3d 666, 671 (9th Cir. 1993).

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

PLAINTIFF'S OPPOSITION TO DEFENDANT CLARIUM CAPITAL MANAGEMENT, LLC'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    Specifically, Amisil's Complaint identifies numerous buy-out attempts and an eventual

2    forced sale whereby Clarium fraudulently attempted to acquire Amisil's interest for far less than its

3    actual value.  In connection with each of these attempted buy-outs, Amisil specifically recounts

4    material misrepresentations made by Clarium through its managing member which were meant to

5    deceive Amisil about the value of its interest.

6    In particular, Amisil has alleged that on May 2, 2002, Clarium represented that Amisil's

7    interest was worth only $372, despite the fact that Clarium at that time owned a stake in PayPal

8    worth approximately $4.9 million.  Compl. ¶¶ 28, 29.  Amisil's Complaint also specifically alleged

9    that on June 14, 2006, Clarium, through its managing member Thiel, made a verbal offer to purchase

10    Amisil's interest for $300,000 yet would not permit Amisil to review Clarium's financial records to

11    evaluate whether this was a true representation of the value of Amisil's interest.  Compl. ¶ 42.

12    Finally, Amisil specifically alleged that in response to Amisil's repeated written requests to view

13    Clarium's books, Clarium unilaterally moved to expel Amisil in order to acquire its interest at a

14    price set by the defendant.  Compl. ¶ 45.

15    These particularized allegations are sufficient to put Clarium on notice of the

16    misrepresentations forming the basis of Amisil's securities fraud claims and therefore satisfy Rule

17    9(b)'s pleading requirements.  Furthermore, with respect to scienter under the PSLRA, Amisil's

18    allegations are sufficient to create a strong inference that Clarium acted with deliberate recklessness.

19    *Nursing Home Pension Fund*, 380 F.3d at 1230.

20    **2.    Amisil Has Pled Each Element of a Securities Fraud Claim.**

21    Amisil has sufficiently alleged each of the six elements of a securities fraud claim.  In order

22    to state a claim for securities fraud under Section 10(b), plaintiff must allege the following six

23    elements: (1) material misrepresentation; (2) scienter; (3) a connection with the purchase or sale of a

24    security; (4) reliance; (5) economic loss; and (6) loss causation.  *Daou*, 397 F.3d at 710, citing *Dura*

25    *Pharm, Inc. v. Brudo*, 544 U.S. 336, 341-42 (2005).  As explained in detail below, Amisil has

26    properly alleged facts with respect to each element.

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT CLARIUM CAPITAL MANAGEMENT, LLC'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

**Element 1:  Material Misrepresentation**

Amisil's Complaint specifically identified several material misrepresentations by Clarium and its constituents which were made in the context of Clarium's numerous attempts to fraudulently purchase Amisil's interest in Clarium.

In particular, in Paragraph 55 of the Complaint, Amisil identifies two misleading statements made on behalf of Clarium.  Clarium has argued in its Motion that Amisil cannot satisfy this element by relying on Clarium's statement that Amisil had a 0.3% interest because the statement is true.  Motion at 11-12.  However, as demonstrated above, Amisil has at all relevant times held at least a 1% ownership interest in the Company under the explicit terms of the Agreements.  *See* Section II (C), (M) & (N), *supra*.  Therefore, Clarium's attempt to devalue Amisil's interest constitutes a material misrepresentation and its argument in its Motion to the contrary has no merit.

Similarly, Clarium had a duty to grant Amisil access to Clarium's books and records.  Amisil properly has alleged that it was a material omission on behalf of Clarium to deny Amisil access to its books and records when Clarium knew Amisil required such access to determine whether Clarium's offers to purchase were fair and reasonable.  Compl. ¶ 55.  Taken in conjunction with Clarium's numerous buy-out attempts, Amisil has pled facts with particularity that give rise to the inference that Clarium's omissions were meant to create an impression that Amisil's interest was worth far less than its actual value.  *See In re Syncor Int'l Corp. Secs. Litig.*, 327 F. Supp. 2d 1149, 1172 (N.D. Cal. 2004) ("omissions [which] affirmatively create an impression of a state of affairs that differs in a material way from one that actually exists" are false or misleading); *see* Compl. ¶¶ 29, 42.  Pursuant to the foregoing, Amisil satisfies the material misrepresentation requirement.

**Element 2: Scienter**

Scienter is defined as "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).  In the Ninth Circuit, scienter includes "deliberate recklessness" consisting of some sort of intentional conduct.  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 977 (9th Cir. 1999).  While a plaintiff must plead scienter with particularity, in deciding whether scienter is properly pled, a court "must consider whether the total of plaintiff['s] allegations, even though individually lacking, are sufficient to create a strong

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  inference that defendants acted with deliberate or conscious recklessness." *Nursing Home Pension*

2  *Fund*, 380 F.3d at 1230 (internal quotations omitted).  All "reasonable inferences" must be

3  considered in determining whether an inference of scienter is present.  *Id.*

4          In this case, Amisil explicitly pled that Clarium acted with reckless disregard in failing to

5  disclose material facts related to the purchase by Amisil and the attempted buy-out by Clarium.

6  Compl. ¶ 54.  Specifically, Clarium acted with intent to deceive in 2002 when it attempted to buy-

7  out Amisil's share for merely $372 when Clarium was well aware that Amisil's share was worth

8  much more than that based on Clarium's investment in PayPal.  Amisil has alleged facts sufficient to

9  show that Clarium withheld information related to its financial status and dealings with PayPal in

10  direct violation of the Agreements calling for disclosure of financial information to Members, and

11  also attempted to buy-out Amisil for significantly less than the value of Amisil's share.  By taking

12  these allegations as a whole, it can be reasonably inferred that Clarium acted with deliberate

13  recklessness by attempting to purchase Amisil's share in Clarium for significantly less than its actual

14  worth around the time that Clarium hit pay dirt in the form of the highly lucrative PayPal

15  transactions described in the Complaint. Compl. ¶¶ 23-32.

16          In addition, noting the totality of the allegations, a reasonable inference can be drawn that

17  Clarium acted with reckless disregard when in 2006 it attempted to again buy Amisil out for much

18  less than the value of its share (*Id*. ¶¶ 42-43, 45) and then expel Amisil in direct violation of the

19  Agreements between the parties (*Id*. ¶ 45).

20          In sum, a reasonable inference could be drawn that Clarium acted with reckless disregard by:

21  1) attempting to buy Amisil out for a fraction of the value of its share in 2002; 2) attempting to buy

22  Amisil out for a fraction of the value of its share again in 2006; and 3) attempting to expel Amisil in

23  2006 in violation of the Agreements.  Pursuant to the foregoing, Amisil sufficiently pled scienter.

24  **Element 3: A Connection with the Purchase or Sale**

25          In order to properly plead this element, a plaintiff must "establish a connection between the .

26  . . alleged misrepresentation and the security at issue."  *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478,

27  1486 (9th Cir. 1991).  A misstatement "need not relate to the investment value of the securities

28  themselves" but it must be more than just tangentially related to the transaction. *Ambassador Hotel*

*Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1026 (9th Cir. 1999). The Ninth Circuit uses a flexible interpretation of the "connection with" language. In *Zelman v. JDS Uniphase Corp.*, this court, applying *Ambassador Hotel*, refused to adopt a bright-line interpretation of the "in connection with" language that misstatements "may be considered 'in connection with' a transaction only where the statements are made by the issuer of the securities and/or refer to the securities in question." 376 F. Supp. 2d 956, 965 (N.D. Cal. 2005).

Clarium incorrectly argues that there must be an actual purchase or sale of a security in order to satisfy this element. This is contrary to the "aborted purchaser-seller doctrine" which has been repeatedly recognized by the Ninth Circuit. Under the aborted purchaser-seller doctrine, where there is "a contractual relationship between the parties, and the transaction was allegedly aborted as a result" of defendant's fraudulent conduct, the "contractual relationship elevate[s] [plaintiff] to the status of statutory purchaser[ ]." *Mosher v. Kane*, 784 F.2d 1385, 1388-89 (9th Cir. 1986), overruled on other grounds by *In re Wash. Pub. Power Supply Sys. Sec. Litig*., 823 F.2d 1349, 1352 (9th Cir. 1987); *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1129 (9th Cir. 2002) (quoting *Mosher*). Here, there is no question that Clarium and Amisil had a contractual relationship (the 1996 Agreement) going into Clarium's attempted buy-outs (in 2002 and 2006) and subsequent attempted expulsion (in 2006). To the extent the purported expulsion is deemed a valid act, it qualifies as a sale under Section 10(b). Clarium declared in the letter dated July 20, 2006, that Amisil was "hereby mandatorily retired as a Member of Clarium as of July 26, 2006." Compl. Ex. E. Thus, the contract to complete the sale was entered into on July 20, 2006, or at the latest on July 26, 2006, with an accounting and settlement to follow. The sale was never consummated because Amisil aborted the sale. Accordingly, Amisil has satisfies this element under the aborted purchaser-seller doctrine.

### Element 4: Reliance

In order to satisfy the reliance element, a plaintiff must plead that it relied upon misrepresentations to its detriment and as a result suffered damages. *Sparling*, 397 F.3d at 722. There is a presumption of reliance in cases such as this where defendant has a duty to disclose information. *Basic Inc. v. Levinson*, 485 U.S. 224, 243, 250 (1988). As explained above, Clarium had a duty to provide Amisil with certain financial information under the explicit terms of the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   Agreements and it repeatedly failed to do so.  Amisil explicitly alleged in its Complaint that it relied

2   on Clarium's "manipulative and deceptive conduct, to its detriment."  Compl. ¶ 56.  In Paragraph 55,

3   Amisil identifies two examples of Clarium's fraudulent or deceptive conduct and throughout the

4   Complaint, Amisil alleged that Clarium improperly withheld information from it. *Id*. ¶¶ 35-45, 50,

5   54.  Amisil alleged that it relied, to its detriment, upon Clarium's statements that it would produce

6   documents related to its financial status rather than enforcing Amisil's rights to inspect the books

7   and records.  *Id*. ¶¶ 39-45.  By the time Amisil realized that no books and records would be

8   forthcoming, Clarium attempted to expel Amisil. *Id*.  ¶ 45.  As such, the reliance element is satisfied.

9   **Elements 5 and 6: Economic Loss to Plaintiff and Loss Causation**

10       Clarium's Motion is not directed to these two elements.  Amisil has alleged that it suffered

11  losses as a result of the deceptive conduct described in the Complaint.  *Id*. ¶¶ 57-59.  As such, Amisil

12  has properly alleged these elements.

13       In Denying Amisil Access to Information, Like-Kind Distributions and By Unilaterally

14  Attempting to Expel Amisil as a Member of the LLC, Clarium is in Breach of the Operating

15  Agreement Governing the Parties.

16  **C.    Amisil Has Pled Common Law Fraud with Particularity as Required by
        Rule 9(b)**

17

18       Contrary to Clarium's arguments, Amisil' Complaint alleged all five elements of common

19  law fraud and no fewer than five instances of fraudulent conduct with particularity.  As such,

20  Clarium's Motion must be denied.

21  **1.    Amisil Has Satisfied the Pleading Requirements of Rule 9(b)**

22       As a general matter, a plaintiff adequately states a claim for fraud under Rule 9(b) if the

23  complaint identifies the general time, place and nature of the alleged fraudulent activity so that a

24  defendant may formulate a response to the charges against him.  *Bosse v. Crowell Collier &*

25  *MacMillan*, 565 F.2d 602, 611 (9th Cir. 1977); *Neubronner*, 6 F.3d at 671.  Given the nature of

26  Amisil's claims, involving specific allegations of internal corporate fraud and material omissions by

27  Clarium's officers, Amisil's Complaint more than meets Rule 9(b)'s particularized pleading

28  requirement.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Amisil's complaint specifically states the date and content of numerous material misrepresentations by Clarium which are sufficient to put defendant on notice of the fraudulent conduct alleged.  As outlined above under Amisil's securities fraud claim, the Complaint specifically states that on May 2, 2002 Clarium fraudulently represented that Amisil's interest was worth only $372, despite the fact that Clarium owned a stake in PayPal worth approximately $4.9 million (Compl. ¶¶ 28, 29) and that on  June 14, 2006, Clarium made an offer to purchase Amisil's interest for $300,000 while denying Amisil access to Clarium's books (Compl. ¶ 42).  These particularized factual assertions support Amisil's allegation that Clarium intended to fraudulent induce Amisil to sell its interest for far less than its true value, and are sufficient to put Clarium on notice regarding the conduct Amisil believes to be fraudulent.

In addition, Amisil has specifically alleged numerous fraudulent omissions meant to conceal the true value of Amisil's interest.  Courts have held that where the facts supporting a claim for fraud are exclusively within a defendant's possession and where the fraud consists of omissions by the defendant, Rule 9(b)'s particularity requirement is relaxed.  *State of Cal. ex rel. Mueller v. Walgreen Corp.*, 175 F.R.D. 638, 640 (N.D. Cal. 1997); *In re U.S. Grant Hotel Assoc. Ltd. Sec. Litig.*, 740 F.Supp. 1460, 1466-67 (S.D. Cal. 1990).  As such, Amisil's more general allegation that Clarium failed to furnish Amisil yearly financial statements is wholly consistent with Rule 9(b)'s pleading requirements for material omissions.  This is particularly true of Clarium's failure to disclose information regarding its investment in PayPal (Compl. ¶ 69(c)) and its failure to advise Amisil of distributions made to Thiel in 2006 (Compl. ¶ 69(d)).  Because information regarding these transactions and the subsequent omissions were at all times within Clarium's exclusive possession, Clarium cannot assert that it is unaware of the basis for Amisil's claim of fraud.

**2.    Amisil Has Specifically Alleged Facts to Support Each Element of its Claim of Fraud**

Under California law, the five elements for pleading common law fraud are: (1) fraudulent misrepresentations; (2) knowledge of their falsity by the defendant; (3) intent to deceive the plaintiff; (4) reliance upon the representations by the plaintiff; and (5) resulting damages to the plaintiff.  *Paul Revere Life Ins. Co. v. Bass*, 523 F.Supp. 134, 135 (N.D. Cal. 1981).  There is absolutely no question

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  that Amisil has pled each of these elements with particularity.  As such, Clarium's Motion must be

2  denied.  At the outset, it is important to note that except for one accusation of lack of reliance,

3  Clarium's Motion merely attacks the first element of a common law fraud claim.

4      **Element 1:  Material Misrepresentations**

5      Clarium incorrectly argues that it had no duty to provide Amisil with its yearly financial

6  statements since 2000 (Compl. ¶65(a)), with information related to the October 2002 PayPal

7  transaction (Compl. ¶65(c)), and information related to the financial status of Clarium and the value

8  of Amisil's share in July 2006, the time of Amisil's purported expulsion.

9      With respect to Clarium's financial statements since 2000, as explained in Section II (G),

10  Amisil retained the right as a Member of the Company to review and receive financial information

11  as provided for in the Operating Agreement § 6.9.  Amisil never gave up this right.  Similarly,

12  Clarium was required under the Agreements to disclose information related to the PayPal transaction

13  to Amisil under Section 6.9 of the Operating Agreement. (Compl. ¶ 69(c)).  This was a material

14  omission on Clarium's part in that it entirely failed to fulfill its obligations under the Agreements.

15  With respect to the purported 2006 expulsion (Compl. ¶ 69(e)), again, Clarium failed to provide

16  Amisil with access to its financial records so that Amisil could evaluate Clarium's financial

17  condition and the value of Amisil's share in the Company under Section 6.9 of the Operating

18  Agreement.  In addition, Clarium's purported expulsion was ineffective under Section 7.2 of the

19  Operating Agreement because Amisil never consented to it and never consented to the purported

20  amendments to the Agreements.

21      Amisil properly alleged that Clarium's May 2, 2002 unsolicited offer (Compl. §69(b)) was a

22  material misrepresentation.  Amisil constantly retained its interest in the Company and the value of

23  this interest was much greater than $372. (Compl. ¶¶ 14-16, 19, 27-37).  Submitting a buy-out offer

24  for $372 when the interest was actually worth much greater than that was a material

25  misrepresentation.

26      In addition, Amisil properly alleged that Clarium's omission regarding the distribution to

27  Thiel was material. (Compl. ¶ 69(d)).  While Portnoy and Woolway informed Amisil of the $31

28

- 14 -                                    -

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   million distribution to Thiel in March 2006, the requisite financial documentation to verify this

2   information was not provided to Amisil.

3   **Element 4: Reliance**

4   Clarium argues that "Amisil . . . was not misled and did not rely on" Clarium's purported

5   misrepresentation related to the 2002 Offer because Amisil did not accept the Offer.  However,

6   Amisil did rely on Clarium's misrepresentations which led it to believe that its share was nearly

7   worthless, despite the fact that the only other member, Thiel, received a $31 million distribution in

8   2005.  Compl. ¶¶ 38, 74).  As such, Amisil has properly alleged that it relied upon Clarium's

9   misrepresentation related to the 2002 Offer.

10  **Elements 2, 3, and 5 Are Not at Issue**

11  In its Motion, Clarium does not challenge Amisil's allegations with respect to the

12  knowledge of falsity, intent to deceive, or damages elements of a common law fraud claim.

13  **D.    Amisil Has Alleged that Clarium Breached the Operating Agreement by
        Denying Amisil Access to Information, Withholding Like-Kind Distributions
14      and Unilaterally Attempting to Expel Amisil as a Member of the LLC.**

15  In order to survive a motion to dismiss for failure to state a breach of contract claim, the

16  plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second,

17  the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff.

18  *Albert v. Alex. Brown Mgmt Services, Inc.*, 2005 WL 2130607, *6 (Del. Ch. August 26, 2005); *see*

19  *also VLIW Technology, LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

20  In this case, Amisil entered into a subscription agreement whereby it invested $300,000 in

21  return for becoming an interest holder in the Fund and also becoming an LLC member in the

22  Company.  Compl. ¶ 19.  Although Amisil withdrew an amount less than its initial contribution from

23  its capital account with the Fund in 1999, Amisil still maintained its membership status in the

24  Company.  *Id.* ¶ 22.  Since 1999, Clarium sent Amisil two documents: 1) the May 2002 offer to

25  purchase its interests for $372 and 2) in early 2003, a proposed amendment to the 1996 Operating

26  Agreement.  *Id.* ¶¶ 29, 34.  Amisil rejected both offers.  *Id.*

27  Since at least 2002, Amisil was not aware of the Company's operations until earlier this year,

28  when it learned that the Company had grown rapidly and was managing more than $1.5 billion in

1    assets. *Id.* ¶¶ 35, 37. Coincidentally, when Amisil learned of Clarium's incredible growth,

2    Clarium's Managing Member, Peter Thiel, together with two of Clarium's officers, Portnoy and

3    Woolway, approached Amisil in order to buy its interests out. *Id.* ¶¶ 36, 38, 39. In a conversation

4    with Portnoy and Woolway, Amisil was informed that Thiel received a "distribution" of over $31

5    million from the Company for calendar year 2005. *Id.* ¶ 38. In response to continued buy-out offers

6    and aware of Thiel's prior multi-million dollar distribution, Amisil sought to invoke its right to

7    access Clarium's books and records as it had a right to do as a member of the LLC. *Id.* ¶¶ 39, 41,

8    42, 43, 44. Instead of allowing for such access, and in the face of a formal written notice to inspect

9    the books and records, Clarium attempted to unilaterally expel Amisil as a member of the LLC. *Id.* ¶

10   45.

11        Amisil asserts that Clarium breached the parties' contracts by (1) failing to provide Amisil

12   with the periodic financial information that all LLC members were entitled to receive; (2) failing to

13   provide Amisil with pro-rata distributions that the only other LLC member, Peter Thiel, received in

14   an amount of at least $31 million dollars; (3) failing to provide Amisil with access to books and

15   records pursuant to its right as an LLC member; (4) attempting to expel Amisil as a member of the

16   LLC and thereby seizing its interest and (5) oppressing Amisil's rights under the agreements. *Id.*

17   ¶ 95.

18        Now, in the face of Amisil's contract claims, Clarium has abandoned its buy-out, and rather,

19   has now fabricated the theory that Amisil actually withdrew as a member of the Company due to

20   Amisil's withdrawal of money from the Fund in 1999. Motion at 3-4. Clarium's "withdrawal

21   argument" now comes over 6 years after Amisil withdrew money from the Fund and is inconsistent

22   with its recent buy-out efforts. On its face, Clarium's argument is implausible both factually and

23   legally. For the reasons that follow, Amisil has properly alleged an action for breach of contract.

24        **1.    Amisil Did Not Withdraw as a Member of Clarium.**

25        Amisil never withdrew as a member of Clarium. Although Clarium attempts to paint

26   Amisil's withdrawal of money from the Fund in 1999 as a withdrawal from the Company, Clarium's

27   repeated efforts in attempting to purchase Amisil's membership interest subsequent to that date lead

28   to a contrary conclusion. Even if this Court indulges Clarium's assertion that § 7.2 and § 7.4 of the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

PLAINTIFF'S OPPOSITION TO DEFENDANT CLARIUM CAPITAL MANAGEMENT, LLC'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  Operating Agreement somehow provide for a member's withdrawal when that member withdraws

2  from the Fund, a simple reading of the cited provisions plainly establishes otherwise.  *See* Section II

3  (E), *supra*.  Even § 7.2 (c), which discusses the withdrawal of money from a member's capital

4  account affecting the member's unvested interest in the Company, does not state or imply that the

5  member is considered withdrawn from the Company; it simply addresses the member's remaining

6  interest in the Company.  At best, the language of § 7.2(c) is ambiguous when applied to the facts as

7  alleged by Amisil.

8      Under Delaware law, in deciding a motion to dismiss, the trial court cannot choose between

9  two differing reasonable interpretations of ambiguous provisions.  *Vanderbilt Income and Growth*

10  *Assocs, LLC v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996). Dismissal, pursuant to

11  Rule 12(b)(6), is proper only if the defendants' interpretation is the only reasonable construction as a

12  matter of law. *Id.* Ambiguity exists "when the provisions in controversy are reasonably or fairly

13  susceptible of different interpretations." *Kaiser Aluminum Corp. v. Matheson*, 681 A.2d 392, 395

14  (Del. 1996).  For purposes of deciding a motion to dismiss, when provisions at issue in an agreement

15  are susceptible to more than one reasonable interpretation, their meaning must be construed in the

16  light most favorable to the non-moving party.  *VLIW Technolog.*, 840 A.2d at 615.

17      The "withdrawal" language relied upon by Clarium does not apply to Amisil's status in the

18  LLC. In fact, Amisil has alleged that it is still a member of the Company and has all the rights and

19  obligations that go with such status.  Compl. ¶¶ 93, 94, 95.  The "withdrawal" provision at issue in

20  the Operating Agreement is susceptible to more than one reasonable interpretation.  For purposes of

21  deciding this motion to dismiss, the meaning must be construed in the light most favorable to Amisil,

22  the non-moving party.  As such, § 7.4 of the Operating Agreement must be read to mean that

23  Amisil's withdrawal from the Fund had no affect on its status as a member of the Company.

24  **2.    Clarium Was Bound to Provide Amisil with Like Kind Distributions, Information and Access to Books and Records.**

25

26      Since Amisil has properly alleged that it is still a member of the LLC, Clarium's entire line

27  of argument based upon Amisil being a withdrawn LLC member necessarily fails.  Plaintiff has

28  properly alleged a claim for breach of contract against Clarium.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

**(a)     Clarium's Failure to Provide Financial Statements, Reports and Related Information Violated the Parties' Operating Agreement.**

In *Albert*, the plaintiff's complaint alleged that the defendant managers had a contractual duty under a partnership agreement to provide plaintiffs with semi-annual unaudited financial statements reporting on the financial condition of certain funds, and annual audited reports. *Albert*, 2005 WL 2130607 at *6. The *Albert* court went on to note the complaint alleged that the plaintiffs did not receive one year's worth of semi-annual reports and also did not receive the 2001 annual audited report until 2003. *Id.* The court then concluded that the "the plaintiffs have satisfied the pleading requirements for a breach of contract claim and this claim cannot be dismissed." *Id.*

Similarly, since at least 2002, Clarium has failed to provide Amisil with statements of Clarium's (i) assets and liabilities, (ii) net profit and losses and (iii) capital account balances for the member. Compl. ¶ 95. As right of contract, all such statements were due to Amisil within 90 days after each fiscal year for the Company. Operating Agreement § 6.9 (c). In further breach of the Operating Agreement, during the last five years, Clarium neither provided Amisil with any statements identifying asset values, nor did it deliver to Amisil copies of financial reports delivered to the Fund and its members. Compl. ¶¶ 35, 49, 50; Operating Agreement § 6.9 (d) – (e). Amisil has been harmed in not receiving the statements, financials and documents in that Amisil has been deprived of income distributions as well as being prevented from acting on the information contained therein. Compl. ¶¶ 62–67.

**(b)     Clarium's Purported Removal of Amisil as a Member of the LLC Violated the Parties' Operating Agreement and Is Not Permitted Under Delaware Law.**

It is a fundamental principle of Delaware law that a majority of the members of a business entity, unless expressly granted such power by contract, have no right to take the property of other members. *Walker v. Resource Development Co. Ltd.*, 791 A.2d 799, 814-815 (Del. Ch. 2000). Delaware law does not allow for the unilateral removal of an LLC member unless provided for in the parties' operating agreement. *Id.* at 813.

The effective operating agreement is the September 9, 1996 Operating Agreement, which was provided to Amisil at the time of its investment in 1998. Compl. ¶¶ 18, 19, 34. The Operating

Agreement contains an explicit provision that a Member may not be removed without its consent. Operating Agreement § 7.3. Although Clarium attempted to amend the Operating Agreement in 2003 to eliminate the consent requirement for the removal of an LLC member, the amendment was properly objected to and thus, the 2003 Amended Operating Agreement is invalid. Id. ¶ 34. Consequently, Clarium's purported removal of Amisil as a member of the LLC is a breach of § 7.3 of the Operating Agreement.

### (c)     Clarium Breached the Parties' Operating Agreement by Not Providing All of Its Members with Like Kind Distributions.

Delaware's Limited Liability Company Act provides members with broad discretion in drafting operating agreements. *Elf Atochem North America, Inc. v. Jaffari*, 727 A.2d 286, 291-92 (Del. 1999). Once members exercise their contractual freedom in their limited liability company agreement, they can be virtually certain that the agreement will be enforced in accordance with its terms. *Walker*, 791 A.2d at 813 (citing 2 R.F. Balotti & J.A. Finkelstein, The Delaware Law of Corporations & Business Organizations, § 20.4 (2000)).

Here, Amisil did not receive a distribution from the LLC for 2005 despite the fact that Clarium's only other member, Thiel, received a $31 million distribution. Although Thiel has the power to provide discretionary distributions, Amisil as the only other member was entitled to a proportionate share of any distribution made. Per the Operating Agreement, "all distributions shall be made in proportion to the Members' closing Capital Account balances." Operating Agreement § 5.1. Finally, because Amisil has never withdrawn its initial capital contribution in the Company, and because Clarium has had positive revenue for at least calendar year 2005; pursuant to § 4.1 of the Operating Agreement, Amisil is entitled to a portion of the Company's profits. Thus, since Amisil has received no such distribution from Clarium, it has properly alleged a cause of action for breach of contract in that regard.

### (d)     Clarium's Refusal to Acknowledge Amisil's Right to Inspect the Company's Books and Records Constitutes a Breach of Contract.

Pursuant to § 6.9 (a) of the Operating Agreement, Amisil had right to inspect Clarium's books and records. From March 2006 to July 2006 Amisil's requests to inspect the books and

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   records have been denied and met with the unlawful responses. *See supra* Section II (F-L). Amisil

2   has been harmed due to this lack of access to information. *Id.* As such, Amisil has properly alleged

3   a cause of action for breach contract by alleging that Clarium has refused to provide access to the

4   Company's books and records pursuant to § 6.9 (a) of the Operating Agreement.

5   **E.    Amisil's Complaint Properly Stated a Claim for Conversion Because California Law Recognizes the Claim for Conversion of Securities.**

6

7   Under California law, "conversion" is any act of dominion wrongfully exerted over another's

8   personal property in denial of or inconsistent with his rights therein. *Hartford Financial*

9   *Corporation v. Burns,* 96 Cal. App. 3d 591, 598 (1979).[2]  It is not necessary that there be a manual

10  taking of the property; it is only necessary to show an assumption of control or ownership over the

11  property, or that the alleged converter has applied the property to his own use. *Susumu Igauye v.*

12  *Howard*, 114 Cal. App. 2d 122, 126 (1952). The elements of a conversion claim are (1) plaintiff's

13  ownership or right to possession of the property at the time of the conversion; (2) defendants'

14  conversion by a wrongful act or disposition of plaintiffs' property rights; and (3) damages. *Hartford*

15  *Financial*, 96 Cal. App. 3d at 598.  All three elements have been alleged here.

16  The Complaint alleged that Clarium has taken, or at the very least, attempted to take,

17  ownership rights and interest in Clarium to which Amisil is rightfully entitled. California courts have

18  long held that a shareholder can sue a corporation for conversion if it wrongfully refuses to transfer

19  title to shares on its books. *Kremen v. Cohen*, 325 F.3d 1035, 1049 (9th Cir. 2003) *citing A.J. Ralston*

20  *v. The Bank of Cal.*, 112 Cal. 208, 213 (1896).  Here, Clarium has failed to provide Amisil with at

21  least one prior distribution, which the only other member, Thiel, received in 2005.[3]  Moreover,

22  _____

23  [2] The Operating Agreement between the parties contains a choice of law provision.  Under California law, contractual choice of law provisions do not ordinarily apply to tort claims, rather, the law of the forum state apply. *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401 (9th Cir. 1992), *see also Medical Instrument Dev. Labs. V. Alcon Labs.*, 2005 U.S. Dist. LEXIS 41411 (N.D. Cal. August 10, 2005) (finding that contract's choice of law clause inapplicable to California tort claims) Here the choice of law provision, as drafted, governs only issues relating to the interpretation and enforcement of contractual rights and liabilities under the Operating Agreement, not tort claims.

24

25

26

27  [3]   Under California law, money can also be the subject of a conversion claim if a specific sum capable of identification is involved. *Haigler v. Donnelly*, 18 Cal. 2d 674, 681 (1941).  When an

28  agent is required to turn over to his principal a definite sum received by him on his principal's

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  Clarium purported to expel Amisil as a member in the face of Amisil's request to inspect the books

2  and records of the Company.  Clarium has no justifiable reason not to let Amisil examine the

3  Company's books and records and no basis to for expelling Amisil and appropriating Amisil's

4  interest.  Thus, Clarium's failure to provide like kind distributions to Amisil and its taking of

5  Amisil's membership interest give rise to a claim for conversion against Clarium.

6  **F.    Amisil's Combined Claim for an Accounting and Constructive Trust is Entirely
7        Proper Under Delaware Law**

8      Requests for accountings and constructive trusts are remedies under Delaware law.

9  However, the Delaware courts have permitted plaintiffs to bring such claims under their own

10  separate counts. *See Dodge v. Wilmington Trust Co.,* 1995 WL 106380, *7 (Del. Ch. Feb. 3, 1995)

11  (court allowed a claim for a constructive trust); *see also Cheese Shop International, Inc. v. Steele*,

12  311 A.2d 870, 871 (Del. 1973*)* (plaintiff was permitted to bring a claim for an accounting in equity

13  for payments allegedly due pursuant to the parties' contract).  Delaware law recognizes a claim for

14  constructive trust where the allegations of misconduct are contained in separate counts of the

15  complaint. *See Dodge,* 1995 WL 106380 at *7.  A Court will impose a constructive trust when "a

16  defendant's fraudulent, unfair or unconscionable conduct causes him to be unjustly enriched at the

17  expense of another to whom he owed some duty."  *Dodge*, 1995 WL 106380 at *7, *citing Adams v.*

18  *Jankouskas*, 452 A.2d 148, 152 (Del. 1948).

19      In *Dodge*, the defendants brought a motion to dismiss plaintiff's request for constructive trust

20  as well as other claims.  1995 WL 106380 at *7.  The plaintiff had a separate claim for constructive

21  trust that was based upon (1) the fraud-related allegations referenced in other counts in his complaint

22  and (2) general equitable principles of restitution and unjust enrichment. *Id.*  In denying the

23  defendant's motion to dismiss, the *Dodge* Court held that plaintiff's claim for a constructive trust

24  was proper even though plaintiff alleged no separate acts aside from those that were relied upon for

25  plaintiff's fraudulent conveyance count. *Id.*

26  ───────────────
27  account, a remedy of conversion is proper. *Id.*  Here, Since Thiel received a distribution from
    Clarium, Amisil also became entitled to a like kind distribution; thus, as soon as Clarium gives
    Amisil access to Clarium's books and records, a definite sum can be determined.

28

PLAINTIFF'S OPPOSITION TO DEFENDANT CLARIUM CAPITAL MANAGEMENT, LLC'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    In the case at bar, Amisil's claim for a constructive trust is coupled with its claim for an

2    accounting.  Plaintiff's combined claim incorporates and relies upon the specific allegations as set

3    forth in Plaintiff's numerous other counts, including fraud, breach of fiduciary duty and conversion.

4    Amisil's integrated claim also relies upon the principles of unjust enrichment. Thus, as pled,

5    Amisil's claim for a constructive trust is sufficient to state a separate claim under Delaware law.

6    Similarly, Amisil's request for an accounting in this same count is entirely proper since it also

7    incorporates and relies upon these same allegations.[4]

8    **G.    The Complaint Stated a Claim for Violation of the Investment Advisers Act.**

9    Clarium does not dispute that Amisil has alleged the requisite misrepresentations and

10   omissions to state a claim for violation of the antifraud provision of the Investment Advisers Act of

11   1940 ("40's Act").  Instead, Clarium attacks Amisil's prayer for relief.  Paragraph 2 of Amisil's

12   Prayer contains a request for "equitable relief," which, as Clarium concedes, properly includes

13   rescission and restitution and which are recoverable under the Investment Advisers Act.[5]  Prayer ¶ 2.

14   Federal Rule of Civil Procedure 8(a) explicitly allows Amisil to seek a multitude of remedies

15   regardless of consistency ("[r]elief in the alternative or of several different types may be

16   demanded").  *See United Roasters, Inc. v. Colgate-Palmolive Co.*, 649 F.2d 985, 990 (4th Cir. 1981)

17   (a party may plead alternative remedies, however inconsistent).  Therefore, Amisil's prayer for both

18   general damages and equitable relief in no way undermines the validity of the 40's Act claim, which

19   has been properly alleged.

---

22   [4]  Under Delaware law, it is well settled that a court can order an accounting when a fiduciary duty
exists between the parties.  *Standard Chlorine of Delaware, Inc., v. Sinbaldi*, 821 F.Supp. 232, 255
23   (D. Del. 1992).  Delaware courts have found that a manager of a limited liability corporation owes a
fiduciary duty of loyalty to the LLC, its investors and his fellow managers under the common law.
24   See *VGS, Inc. v. Castiel*, 2000 WL 1277372, *4 (Del. Ch. Aug. 31, 2000), aff'd , 781 A.2d 696 (Del.
2001). Here, Thiel, as the manager of the LLC owes a fiduciary duty to the LLC's only other
25   member, Amisil. As alleged in Plaintiff's Complaint, due to Thiel's numerous breaches of his
fiduciary duties, an accounting is entirely proper and necessary based upon the principles of unjust
26   enrichment.

27   [5]  A violation of § 80b-1-6 of the Act is also punishable by monetary sanctions pursuant to § 80b-9.
15 U.S.C. § 80b-9.

1

### H.     Amisil Has Properly Alleged a Claim for Unfair Business Practices under California Law

2

3       Amisil is entitled to bring a claim against Clarium for violation of California's Business &

4   Professions Code section 17200 et seq. ("Section 17200"), because a contractual choice of law

5   provisions cannot thwart the application of a California statute to conduct and events occurring

6   within its borders.  This Court has held that a contractual choice of law provision cannot bar a

7   Section 17200 claim, "a claim brought under California law."  *Medical Instrument Dev. Labs. v.*

8   *Alcon Labs.*, 2005 U.S. Dist. LEXIS 41411, at *9 (N.D. Cal. Aug. 10, 2005) (Jenkins, J.).  Even if a

9   party may contract away its right to invoke the protections of the state in which a tort was

10  committed, California law properly applies to Amisil's unfair business practices claim under the test

11  set forth in *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459 (1992).

12      *Nedlloyd* states that the enforceability of a contractual choice of law provision depends on (1)

13  whether the chosen state has a substantial relationship to the parties or their transaction, or

14  (2) whether there is any other reasonable basis for the parties' choice of law; but in any event, the

15  chosen state's law may not be contrary to a fundamental policy of California.  *Id.* at 465-466.

16  California clearly has a substantial relationship to the parties and events at issue since all the

17  defendants are located in California.  Compl. ¶¶ 8-11; 18, 38.  There is no basis for the parties'

18  purported choice of Delaware law other than that Clarium was incorporated there.  *Id.* ¶ 8.

19  Precluding application of Section 17200 under these facts would be contrary to the fundamental

20  policy of this state, which has a materially greater interest than Delaware in the determining of the

21  claims of unfair business practices occurring within its borders, and which would be the state of the

22  applicable law in the absence of an effective choice of law of the parties.  Accordingly, Amisil is

23  entitled to pursue its unfair business practices claim under California law.

24      The Complaint properly alleged a claim for unfair business practices under the normal

25  pleading standard under Rule 8, since the Federal Rules do not require pleading state statutory

26  claims with particularity.  *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 515 (2002) ("[a]

27  requirement of greater specificity for particular claims is a result that 'must be obtained by the

28  process of amending the Federal Rules, and not by judicial interpretation.'"); *Empress LLC v. City*

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

*and County of San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005) ("a heightened pleading standard should only be applied when the Federal Rules of Civil Procedure so require"). Amisil alleged that Clarium and the other defendants violated federal securities laws. Compl. ¶¶ 51-77. Amisil further alleged that the defendants "disguised the value of Amisil's interest while purporting to offer Amisil the real value of its interest." *Id*. ¶ 104. As to unfair practices, paragraph 104 and the preceding allegations incorporated by reference contain a litany of abuses and contractual breaches committed by Clarium and the other defendants. "The test of whether a business practice is unfair involves an examination of that practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *Wilner v. Sunset Life Ins. Co*., 78 Cal. App. 4th 952, 965 (2000) (internal quotations omitted). A single instance of such conduct may suffice. *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647 (1996). The pattern of deception and wrongdoing committed by Clarium's agents alleged here certainly may qualify as an unfair business practice. Thus, Amisil has properly pled a claim for violation of Section 17200 under all three prongs of the statute.

**I.    Amisil Has Alleged a Claim for Breach of Implied Covenants of Good Faith and Fair Dealing under Delaware Law**

Under Delaware law, an implied covenant of good faith and fair dealing inheres in every contract. *Wilgus v. Salt Pond Inv. Co.*, 498 A.2d 151, 159 (Del. Ch. 1985). From that implied covenant flows the principle of contract construction that "if one party is given discretion in determining whether [a] condition in fact has occurred[,] that party must use good faith in making that determination." *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1055 (Del. Ch. 1984), aff'd, 575 A.2d 1131 (Del. 1990). Amisil alleged that, whether or not Clarium had a right to remove a member without consent, Clarium invoked its purported right to remove Amisil in bad faith (in response to Amisil's repeated demand to access Clarium's books and records). Compl. ¶¶ 34, 45; *compare Wilmington Leasing, Inc., et al. v. Parrish Leasing Company, L.P.*, 1996 Del. Ch. LEXIS 123, at *5-7 (Del. Ch. Sept. 25, 1996) (removal of general partner was actionable breach of implied covenant of good faith and fair dealing). This clearly the type of misconduct that Amisil "would have expressly

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    [sought to proscribe]" had the parties "thought to negotiate" these matters.  Thus, the claim for

2    breach of implied covenant of good faith and fair dealing has been properly alleged.

3    **J.       Amisil May Allege a Claim for Preliminary and Permanent Injunction.**

4    Federal Rule of Civil Procedure 8(a) states that a claim for relief "shall contain . . . a short

5    and plain statement of the claim showing that the pleader is entitled to relief."  Count XI of the

6    Complaint comprises a short and plain statement of facts that, once proven, would establish Amisil's

7    entitlement to preliminary and permanent injunction.  Clarium's attack on the form of this pleading

8    is trivial and should be accorded no weight.

9    **IV.  CONCLUSION**

10   For the foregoing reasons, Clarium's motion to dismiss the Complaint for failure to state a

11   claim should be denied in its entirety.[6]

12   DATED:  October 17, 2006.

13                                          REED SMITH LLP

14

15                                          By_____/s/_____
                                                Tita K. Bell
16                                              Attorneys for Plaintiff
                                                Amisil Holdings Ltd.

17

18

19

20

21

22

23

24

25

26   _____

27   [6] If this Court grants said motion with respect to any claim, Amisil respectfully requests that it be
     allowed leave to amend. *Allen v. Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (leave to amend
     should be freely given when justice so requires).

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

PLAINTIFF'S OPPOSITION TO DEFENDANT CLARIUM CAPITAL MANAGEMENT, LLC'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM